**2014-1254**

IN THE
**UNITED STATES COURT OF APPEALS**
FOR THE FEDERAL CIRCUIT
_____

EIDOS DISPLAY, LLC, EIDOS III, LLC,

*Plaintiffs - Appellants*,

v.

AU OPTRONICS CORPORATION, AU OPTRONICS CORPORATION AMERICA, CHI MEI INNOLUX CORPORATION, CHI MEI OPTOELECTRONICS USA INC., CHUNGHWA PICTURE TUBES, LTD., HANNSTAR DISPLAY CORPORATION, HANNSPREE NORTH AMERICA, INC.,

*Defendants - Appellees.*

_____

**Appeal from the United States District Court for
the Eastern District of Texas in Case No. 6:11-cv-201-LED-JDL
Judge Leonard Davis**

_____

**BRIEF OF PLAINTIFFS-APPELLANTS
EIDOS DISPLAY, LLC AND EIDOS III, LLC**

_____

GASPARE J. BONO
R. TYLER GOODWYN, IV
CASS W. CHRISTENSON
MCKENNA LONG & ALDRIDGE LLP
1900 K STREET, N.W.
WASHINGTON, D.C. 20006
(202) 496-7500

*Attorneys for Plaintiffs-Appellants
Eidos Display, LLC and Eidos III, LLC*

May 8, 2014

# CERTIFICATE OF INTEREST

Counsel for appellants Eidos Display, LLC and Eidos III, LLC certify the following:

1.      The full name of every party or amicus represented by me is:

Eidos Display, LLC and Eidos III, LLC

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Eidos Display, LLC and Eidos III, LLC

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

**McKenna Long & Aldridge LLP**: Gaspare J. Bono, R. Tyler Goodwyn, Cass W. Christenson, Lora A. Brzezynski, Carl P. Bretscher, Claire M. Maddox, Eric Y. Wu, John W. Lomas, Jr., Alyssa K. Sandrowitz, Sunjeev S. Sikand, Jennifer McKeown

**Wilson, Robertson & Cornelius, P.C.**: Jennifer P. Ainsworth, William J. Cornelius, Jr., Matthew T. Milam

May 8, 2014

/s/Gaspare J. Bono

GASPARE J. BONO
R. TYLER GOODWYN, IV
CASS W. CHRISTENSON
MCKENNA LONG & ALDRIDGE LLP
1900 K STREET, N.W.
WASHINGTON, D.C. 20006
(202) 496-7500

*Attorneys for Plaintiffs-Appellants*
*Eidos Display, LLC and Eidos III, LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................iv

STATEMENT OF RELATED CASES .................................................. viii

INTRODUCTION ........................................................................................1

JURISDICTIONAL STATEMENT ..........................................................2

STATEMENT OF THE ISSUE..................................................................3

STATEMENT OF THE CASE....................................................................3

I.   Eidos' Complaint for Patent Infringement Against Defendants ....................4

II.  The '958 Patent and the Claimed Method for TFT-LCD
     Manufacturing.......................................................................................5

III. The Prosecution History and the Specification .............................10

IV.  The Reexamination Proceedings Concerning the '958 Patent ......................14

V.   Defendants Represent that "A Contact Hole for Source Wiring and
     Gate Wiring Connection Terminals" Is "Easily Understandable" ................16

VI.  The Parties Propose Constructions for "A Contact Hole for Source
     Wiring and Gate Wiring Connection Terminals" and No Party Asserts
     that this Term Is Indefinite .........................................................................17

     A.   The Magistrate Judge Defers Construing the Term Concerning
          Contact Holes for Connection Terminals as not "Ripe" ....................18

     B.   The Magistrate Judge's Claim Construction Order Is Adopted..........20

VII. Summary Judgment of Indefiniteness Is Entered, Despite Evidence
     Showing the Understanding of One Skilled in the Art.................................21

     A.   The Magistrate Judge's Report Confirming that a Contact Hole
          for Each Terminal Is a Reasonable Claim Construction....................24

     B.   The District Court's One-Page Order Granting Summary
          Judgment of Invalidity for Indefiniteness ..........................................25

SUMMARY OF THE ARGUMENT ....................................................27

ARGUMENT ...........................................................................................30

I.   This Court Reviews De Novo Whether Defendants Proved, by Clear
     and Convincing Evidence, that Claim 1 Is Indefinite ...................................30

# TABLE OF CONTENTS
## (continued)

A.  The Standard of Review ....................................................30

B.  The Defense of Indefiniteness Requires Clear and Convincing Evidence that One of Skill Cannot Understand the Claim ..................30

II.  Defendants Introduced No Evidence that a Person of Skill Would Not Understand the Scope of the Claim, and Even if Such Disputed Evidence Had Existed, Summary Judgment Would Be Improper ................32

A.  The Unrebutted Evidence Is that a Person of Ordinary Skill in the Art Would Easily Understand the G8 Step ...................................33

1.  A Person of Skill Would Understand the Claim Scope With Reasonable Certainty .......................................33

2.  Defendants Did Not Rebut Eidos' Evidence Concerning the Knowledge of a Person Skilled in the Art .........................35

3.  The Court Implicitly Shifted the Burden To Eidos, Contrary to the Presumption of Validity...................................37

B.  The Evidence Establishes that the G8 Step Means Forming A Contact Hole for Each of the Connection Terminals ..........................39

1.  The District Court Agreed that Separate Contact Holes for the Connection Terminals is a Reasonable Construction ...........................................................41

2.  Defendants' Unreasonable Argument for One Common Contact Hole Lacks Support and Was Properly Rejected ........42

C.  The Parties' Claim Construction Dispute Is Not Evidence of Indefiniteness.......................................................................43

D.  Even if Defendants Had Introduced Any Evidence of Indefiniteness, Issues of Fact Would Preclude Summary Judgment ...........................................................................44

III.  The District Court Erroneously Substituted Its Own Knowledge, Instead of Applying the Knowledge of One Skilled in the Art, as Confirmed by the Intrinsic Evidence............................................45

A.  The Specification Confirms that the Claim Language Means Forming A Contact Hole for Each of the Connection Terminals .......47

# TABLE OF CONTENTS
## (continued)

B.    The Reexamination Proceedings Confirm that A Contact Hole is Formed for Each of the Connection Terminals ...............................55

C.    The '958 Patent Did Not Need To Explain Further What A Person of Skill in the Art Would Already Know ...............................56

D.    Claim 1 Does Not Use "Terms of Degree" or Other Inherently Ambiguous or Subjective Terms.........................................................57

CONCLUSION ........................................................................................................58

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Am. Med. Sys., Inc. v. Laser Peripherals, LLC*,
    712 F. Supp. 2d 885 (D. Minn. 2010) .................................................45

*Atmel Corp. v. Info. Storage Devices, Inc.*,
    198 F.3d 1374 (Fed. Cir. 1999) .........................................................57

*Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*,
    359 F.3d 1367 (Fed. Cir. 2004) .........................................................47

*Bayer AG v. Biovail Corp.*,
    279 F.3d 1340 (Fed. Cir. 2002) .........................................................46

*BJ Servs. Co. v. Halliburton Energy Servs., Inc.*,
    338 F.3d 1368 (Fed. Cir. 2003) .........................................................44

*Braintree Labs., Inc. v. Novel Labs., Inc.*,
    No. 2013-1438, 2014 WL 1584451 (Fed. Cir. Apr. 22, 2014) ...........30

*Budde v. Harley-Davidson, Inc.*,
    250 F.3d 1369 (Fed. Cir. 2001) .........................................................27

*Chaplin v. NationsCredit Corp.*,
    307 F.3d 368 (5th Cir. 2002) .............................................................30

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
    358 F.3d 1371 (Fed. Cir. 2004) .........................................................40

*Elcommerce.com, Inc. v. SAP AG*,
    745 F.3d 490 (Fed. Cir. 2014) .....................................................passim

*Elkay Mfg. Co. v. Ebco Mfg. Co.*,
    192 F.3d 973 (Fed. Cir. 1999) ...........................................................39

*Energizer Holdings, Inc. v. Int'l Trade Comm'n*,
    435 F.3d 1366 (Fed. Cir. 2006) .........................................................41

*Enzo Biochem, Inc. v. Applera Corp.*,
599 F.3d 1325 (Fed. Cir. 2010) ........................................................33

*Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*,
279 F.3d 1022 (Fed. Cir. 2002) ........................................................52

*Exxon Research & Eng'g Co.*,
265 F.3d 1371 (Fed. Cir. 2001) ..................................................32, 46

*Gen. Elec. Co. v. Nintendo Co.*,
179 F.3d 1350 (Fed. Cir. 1999) ........................................................44

*Green Edge Enterprises, LLC v. Rubber Mulch Etc., LLC*,
620 F.3d 1287 (Fed. Cir. 2010) ........................................................30

*Haemonetics Corp. v. Baxter Healthcare Corp.*,
607 F.3d 776 (Fed. Cir. 2010) ....................................................31, 43

*Hearing Components, Inc. v. Shure Inc.*,
600 F.3d 1357 (Fed. Cir. 2010) ........................................................41

*INVISTA N. Am. S.à.r.l. v. M&G USA Corp.*,
951 F. Supp. 2d 626 (D. Del. 2013)..................................................45

*Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*,
No. C 09-00355, 2011 WL 5974668 (N.D. Cal. Nov. 29, 2011) ......45

*Martin v. Alamo Cmty. Coll. Dist.*,
353 F.3d 409 (5th Cir. 2003) ............................................................30

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB*,
344 F.3d 1205 (Fed. Cir. 2003) ........................................................56

*Merck & Co., Inc. v. Teva Pharms. USA, Inc.*,
347 F.3d 1367 (Fed. Cir. 2003) ........................................................42

*Personalized Media Commc'ns, LLC v. ITC*,
161 F.3d 696 (Fed. Cir. 1998) ..........................................................57

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (*en banc*).......................................54

*Praxair, Inc. v. ATMI, Inc.*,
    543 F.3d 1306 (Fed. Cir. 2008) ...........................................................30, 32, 41

*Raytheon Co. v. Indigo Sys. Corp.*,
    688 F.3d 1311 (Fed. Cir. 2012) ...................................................................30, 31

*Seattle Box Co. v. Indus. Crating & Packing, Inc.*,
    731 F.2d 818 (Fed. Cir. 1984) ............................................................................57

*SFA Sys., LLC v. Infor Global Solutions (Michigan), Inc.*,
    No. 6:07 CV 067, 2009 WL 440559 (E.D. Tex. Feb. 23, 2009) ........................56

*Tech. Licensing Corp. v. Videotek, Inc.*,
    545 F.3d 1316 (Fed. Cir. 2008) ..........................................................................39

*TriMed, Inc. v. Stryker Corp.*,
    608 F.3d 1333, 1341 (Fed. Cir. 2010) ..........................................................29, 44

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
    659 F.3d 1376 (Fed. Cir. 2011) ......................................................................32, 46

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
    587 F.3d 1339 (Fed. Cir. 2009) ....................................................................29, 31

*Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*,
    204 F.3d 1360 (Fed. Cir. 2000) ..........................................................................27

*Verve, LLC v. Crane Cams, Inc.*,
    311 F.3d 1116 (Fed. Cir. 2002) ...................................................................passim

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.*,
    721 F.2d 1540 (Fed. Cir. 1983) ..........................................................................39

*Wellman, Inc. v. Eastman Chem. Co.*,
    642 F.3d 1355 (Fed. Cir. 2011) ...................................................................passim

*Young v. Lumenis, Inc.*,
    492 F.3d 1336 (Fed. Cir. 2007) ....................................................................31, 57

**FEDERAL STATUTES**

28 U.S.C. § 1295(a)(1)................................................................2

28 U.S.C. §§ 1331, 1338(a) .........................................................2

35 U.S.C. § 112 ...........................................................................32

## STATEMENT OF RELATED CASES

No other appeal in or from the civil action below has been before this or any other appellate court.

There is no other case in this or any other court known to directly affect or be directly affected by this Court's decision in the instant appeal.

# INTRODUCTION

In this patent infringement case, the district court entered summary judgment that claim 1 of U.S. Patent No. 5,879,958 ("the '958 Patent") is invalid as indefinite. The court acknowledged that Appellants had provided a reasonable construction for the claim term at issue, yet did not adopt that construction. The judgment of invalidity should be reversed because:

1.    The evidence shows that the claim term at issue has a certain and definite meaning to one of skill in the art. Defendants had the burden of proof, yet presented no evidence, much less clear and convincing evidence, that one of ordinary skill in the art would not understand the meaning and scope of this claim term.

2.    The district court's holding is contrary to the specification and the other evidence submitted by Appellants showing that a person of skill at the time of the invention would understand the claim term. Instead of adopting the only reasonable construction, the court erroneously substituted its own knowledge in place of that of a person of ordinary skill in the art. Moreover, the court improperly focused on a single embodiment (the "G" embodiment), instead of considering the entire specification.

3.    Even if Defendants had offered rebuttal evidence disputing whether a person of ordinary skill at the time of the invention would understand the contested

term, summary judgment would still be inappropriate since, at most, this would have raised disputed factual issues.

On this record, there was no factual or legal basis upon which the district court could have granted summary judgment that claim 1 is indefinite, and this Court should reverse the final judgment of indefiniteness.

## JURISDICTIONAL STATEMENT

The district court granted summary judgment of indefiniteness in favor of Defendants AU Optronics Corporation ("AUO"), AU Optronics Corporation America, Chi Mei Innolux Corporation ("CMI"), Chi Mei Optoelectronics USA, Inc., Chunghwa Picture Tubes, Ltd. ("CPT"), HannStar Display Corporation ("HSD"), and Hannspree North America, Inc. (collectively "Defendants") on January 22, 2014, A22C, and entered final judgment on April 28, 2014, A22A-B. The district court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). This Court has subject matter jurisdiction under 28 U.S.C. § 1295(a)(1).

Appellants Eidos Display, LLC ("Eidos Display") and Eidos III, LLC (collectively "Eidos") filed a notice of appeal in the district court on February 10, 2014, A9168-69, and filed an amended notice of appeal on April 28, 2014, *see* A12953. This appeal is from the district court's summary judgment and the final judgment that granted summary judgment that claim 1 is invalid as indefinite and dismissed any remaining claims and counterclaims as moot. A22C; A22A-B.

2

## STATEMENT OF THE ISSUE

The definiteness inquiry must be grounded on the reasonable understanding of a person skilled in the art. Defendants presented no evidence that a person of ordinary skill in the art at the time of the invention would not understand the scope of the claim term at issue. Eidos presented unrebutted factual evidence that a person of skill at that time would understand with reasonable certainty the scope of the claim term, as confirmed in the specification. Did the district court err in summarily deciding that the claim is indefinite?

## STATEMENT OF THE CASE

The district court required that any indefiniteness defenses be raised early in the case, at the time of claim construction. *See e.g.*, A450-51; A902. No Defendant asserted any indefiniteness defense during claim construction. Instead, all parties proposed constructions for each of the disputed claim terms, including the term at issue here: "a contact hole for source wiring and gate wiring connection terminals." *See, e.g.*, A895; A1623.

The Magistrate Judge deferred construction of this term as not "ripe," but recognized that the claim could mean a contact hole for each of the connection terminals. A2023. At that time, the court had not received evidence concerning the practice in the art or the understanding of one skilled in the art. A2179. Eidos subsequently submitted declarations from two experts in liquid crystal display

3

("LCD") manufacturing, *see* A5942-53; A5955-65, explaining that industry practice, from before the time of the invention through today, has been to form separate contact holes for the connection terminals, *see* A5943-44; A5963-64. The declarations also explained that this is how one skilled in the art would understand the claim, including based on the specification. *See* A5946-49; A5959-64.

One month before the start of trial, the Magistrate Judge declined to "guess" how to interpret the claim language, *see* A23-35 at A34, and thus recommended that the district judge grant summary judgment of invalidity for indefiniteness. *Id.* Eidos objected, *see* A9060-97, and again submitted expert declarations confirming that one of ordinary skill would understand the claim term to mean a contact hole for each of the connection terminals, consistent with the evidence and knowledge in the field, *see* A9101-14; A9116-26. In a one-page order, the district court summarily granted summary judgment of invalidity. A22C.

## I.   Eidos' Complaint for Patent Infringement Against Defendants

Eidos Display owns the '958 Patent. A196 ¶ 1. Eidos' complaint, filed in April 2011, alleges that Defendants infringe claim 1, the only claim of the '958 Patent. A201-06. Defendants AUO, CMI, CPT, and HSD each operate LCD manufacturing facilities and are headquartered in Taiwan. A197-99. These Defendants make thin film transistor ("TFT") arrays and LCD modules that are used in finished LCD products, such as cell phones, laptop computers, tablets,

monitors, and televisions. The other Defendants are affiliated with certain of these manufacturing Defendants, and are engaged in marketing, sales, and customer service and support for Defendants' LCD products, including in the United States. *Id.*

The district court referred all pretrial proceedings to a Magistrate Judge. A375. The parties completed fact and expert discovery, and submitted a Pretrial Order. *See* D.I. 293. Trial was scheduled to begin in January 2014. *See* A445.

## II. The '958 Patent and the Claimed Method for TFT-LCD Manufacturing

The '958 Patent, entitled "Method of Producing an Electro-Optical Device," is directed to a more efficient, less costly method of fabricating the TFT arrays that control the individual picture elements (pixels) in a LCD product. A36-121, A94 at 4:26-49. The '958 Patent claims an improved method of fabricating a TFT array using only five photolithographic steps (a "five-mask" process), whereas the prior art commonly used more than five photolithographic steps. *See, e.g.*, A99 at 14:32-38 (five mask); A93 at 2:4-3:45 (seven mask); *see also* A2017. Each photolithographic step increases production time and cost. A110 at 36:46-53. By reducing the number of photolithographic steps, the invention reduces production costs and improves production yields. A93-94 at 1:9-14, 4:26-49.

TFTs are constructed by sequentially depositing layers of material and then using photolithography to remove, or pattern, portions of layers to form

components and structures, such as wiring, electrodes, and contact holes.  The

images on an LCD screen are formed using voltages on pixel electrodes that orient

liquid crystals.  Each pixel electrode is controlled by a TFT that is connected to a

source line and a gate line.  *See* A9104 ¶ 4.  In a typical TFT array, around 1994

(the priority date of the '958 Patent),[1] image data was supplied to TFTs through the

source wiring; and TFTs were turned on and off by voltages on the gate wiring.

The '958 Patent exemplifies these well-known LCD structures in the prior art, as

shown in Figure 169 from the '958 Patent:



A91.

The source wirings, $S_1 \ldots S_n$, run vertically and electrically connect with

source driver circuitry ("signal supply circuit") to provide image data to columns

of TFT source electrodes.  A93 at 1:19-39; A91 at Fig. 169.  The gate wirings,

---

[1] The application for the '958 Patent was filed on November 7, 1996, with foreign
priority applications dated June 3, 1994 and October 17, 1994.  A36.

$G_1 \ldots G_n$, run horizontally and electrically connect with gate driver circuitry ("scanning circuit") to provide control signals to rows of TFT gate electrodes. A91 at Fig. 169.

The "source wiring connection terminals" and "gate wiring connection terminals" are located at the end of each of the source and gate lines along the top and left edges, respectively, where electrical connections are made between the driver circuits and source wiring or gate wiring. *Id.* In an LCD array, there are thousands of source and gate lines, each with a connection terminal located at an end of the respective line. A2020-21. Thousands of contact holes are formed through insulating layers so that connection terminals can electrically connect each individual source wiring and gate wiring to its respective driver circuit.

Claim 1 of the '958 Patent, in its entirety, recites the following steps:

> 1. A method for producing an electro-optical device in which an electro-optical material is put between a pair of substrates opposed to each other, at least a portion of opposing surfaces of the substrates is insulative, a plurality of source wirings and a plurality of gate wirings are formed crossing each other on the surface of one of said pair of substrates and a transparent pixel electrode and a thin film transistor are formed at each of the crossing points between the source wirings and the gate wirings, wherein the method comprises:
>> a step G1 of forming a first metal film on the surface of said one substrate,
>> a first photolithographic step G2 of patterning the first metal film to form a gate electrode and a gate wiring,

a step G3 of forming a first insulator film, a semiconduc-
tor film and an ohmic contact film on the surface of
said one substrate after the first photolithographic step,

a second photolithographic step G4 of patterning the
semiconductor active film and the ohmic contact film to
form a semiconductor portion above the gate electrode
in a state isolated from other portions,

a step G5 of forming a second metal film on the surface of
said one substrate after the second photolithographic
step,

a third photolithographic step G6 of patterning the second
metal film and the ohmic contact film to form a source
electrode, a drain electrode and a channel portion,

a step G7 of forming a passivation film on the surface of
said one substrate after the third photolithographic step,
and

a fourth photolithographic step G8 of patterning the
passivation film to form a contact hole reaching the
gate wiring, a contact hole reaching the drain electrode
and *a contact hole for source wiring and gate wiring
connection terminals*,

a step G9 of forming a transparent conductive film on the
surface of said one substrate after the fourth photo-
lithographic step, and

a fifth photolithographic step G10 of patterning the trans-
parent conductive film to form a transparent pixel
electrode.

A121 at 58:5-45 (emphasis added).

Only the last term of the fourth photolithographic step G8 ("the G8 step") of

the claim is at issue. For the sake of clarity, it is important to note that the parties

below disputed two separate, mutually exclusive, issues concerning contact holes

in the G8 step. The first issue, which is *not relevant to this appeal*, relates to

whether a contact hole reaching the gate wiring is separate from the contact hole

for the gate wiring connection terminal as shown in italics below:

> patterning the passivation film to form *a contact hole reaching the gate wiring*, a contact hole reaching the drain electrode *and a contact hole for* source wiring and *gate wiring connection terminals*

*Id.* at 58:35-39 (emphasis added). The court agreed with Eidos that these are

separate contact holes. *See* A1664-65 at 5:16-6:5 (discussion at *Markman*

hearing).

The contact hole issue, relevant here, is whether a contact hole for the source

wiring and gate wiring connection terminals is formed for each of those connection

terminals, or as one and the same opening for both of the connection terminals.

The district court ruled that only the last portion of the G8 step concerning contact

holes for the connection terminals, as shown below in italics, is indefinite:

> patterning the passivation film to form a contact hole reaching the gate wiring, a contact hole reaching the drain electrode and *a contact hole for source wiring and gate wiring connection terminals*

*Id.* at 58:35-39 (emphasis added).

The district court construed various terms relevant to this G8 step, thus

providing a meaning for "contact hole"[2] and "connection terminals."[3] Further, the

---

[2] A "contact hole" means an "opening." *See* A2024 (construing "a contact hole reaching the gate wiring" to mean "an opening exposing a portion of the gate wiring").

court construed "a contact hole" to mean "one or more" contact holes and noted "there is no dispute that thousands of contact holes would be made using step G8." A2020-21. The only remaining issue is whether the contact holes are formed as one combined hole for both the source wiring and gate wiring connection terminals, or as a separate hole for each of the connection terminals.

## III. The Prosecution History and the Specification

The parent application for the '958 Patent disclosed 18 embodiments, identified by letter, and included 20 original claims.[4] Original claim 8 issued as claim 1 in the '958 Patent. *Compare* A5999-6001, *with* A121 at 58:5-45. Original claims 3, 4, 5, 7, and 8 use the identical phrase that is in dispute in claim 1 of the '958 Patent—each of those claims recite "a contact hole for source wiring and gate wiring connection terminals."[5] *See* A5990-6001. Thus, for example, original

---

[3] "Connection terminals" are "conductive material for electrical connection to source wiring and/or gate wiring." A2441.

[4] The application (No. 08/745,933) was filed on November 7, 1996 as a divisional application, claiming priority to the parent application (No. 08/459,925, now U.S. Patent No. 5,726,077). A36. A preliminary amendment cancelled all claims except original claim 8.

[5] Claims 3, 4, 5, 7, and 8 in the parent application correspond to the "B," "C," "D," "F," and "G" embodiments, respectively, disclosed in the '958 patent specification. *Compare* A5990-96, A5998-6001 (original claims 3, 4, 5, 7, and 8), *with* A95-96 at 5:37-8:64 ("B," "C," "D," "F," and "G" embodiments). Claims 3, 4, 5, 7, and 8 all require etching of the passivation layer to form openings for the necessary electrical connection to the driver circuits for the source wiring and gate wiring

claim 5 (in the D8 step) and original claim 8 (in the G8 step) recite the relevant

limitation "a fourth photolithographic step [D8/G8] of patterning the passivation

film …[forming/to form]… a contact hole for source wiring and gate wiring

connection terminals," as is shown below:

| **Original Claim 5 (D8 Step)** | **Original Claim 8, Issued as Claim 1 of '958 Patent (G8 Step)** |
|---|---|
| "a fourth photolithographic step D8 of *patterning the passivation film* to remove a portion of the passivation film, the second metal film, the ohmic contact film, the semiconductor active film and the first insulator film above the transparent pixel electrode and make a portion above the transparent pixel electrode light permeable, isolating the semiconductor active film below the source electrode, the drain electrode and the source wiring from the semiconductor active film of adjacent thin film transistor having the gate wiring in common and forming *a contact hole for source wiring and gate wiring connection terminals"* | "a fourth photolithographic step G8 of *patterning the passivation film* to form a contact hole reaching the gate wiring, a contact hole reaching the drain electrode and *a contact hole for source wiring and gate wiring connection terminals*" |
| A96 at 7:11-22 (reproducing original claim 5) (emphasis added); *see also* A5994-95. | A96 at 8:54-58 (reproducing original claim 8) (emphasis added); *see also* A5999-6001. |

The "D" embodiment, moreover, specifically explains that, during the fourth

photolithographic step, the passivation film and other films are removed by dry

connection terminals. *See, e.g.*, A5990-96, A5998-6001 (steps B9, C9, D8, F8, and G8).

etch so that "at the same time, *a contact hole 132 for a source wiring connection terminal and a contact hole for a gate wiring connection terminal* (formed above the gate wiring 113 although not illustrated) are formed."  A108 at 31:42-53 (emphasis added); *see also* A48 at Fig. 36.  Defendants have not disputed that this embodiment specifically discloses forming a separate contact hole for each of the connection terminals.  A9141 (conceding that the "*text plainly describes in a D8 step forming 'a contact hole 132 for a source wiring connection terminal' and 'a contact hole for a gate wiring connection terminal,*' but in a different step (step D4) forming 'a contact hole 121 leading to the gate wiring.'") (emphasis added).

Forming contact holes for each of the connection terminals was well-known at the time of the application, *see* A9102 ¶ 3, is reflected in the prior art, *see* A6181-82 ¶¶ 109-110, and is not a point of novelty in the claim, *see* A9106-07 ¶ 8; A9131-32 at 69:6-70:16.  Thus, while the specification describes several embodiments that pattern a passivation layer to form a contact hole for each of the source wiring and gate wiring connection terminals, the description of each embodiment did not reiterate that one of the contact holes was not shown in the embodiment's respective figures.  *See, e.g.*, A106-10 at 28:1-8  ("B" embodiment), 29:55-61 ("C" embodiment), A108-10 at 31:42-57 ("D" embodiment), 34:66-35:8 ("F" embodiment), 36:28-34 ("G" embodiment).

The known practice of forming a contact hole for each of the connection terminals was also depicted in Defendants' technology tutorial presented to the court. *See* A6163; *see also* A5951-52 ¶ 32; A5962-63 ¶ 20. In that tutorial, Defendants explained their understanding of the G8 step. Referring to the claim and Figure 61 of the patent, Defendants added an illustration (screen shot below) that depicts different contact holes for each of the connection terminals:



*See* A6163. Defendants' tutorial shows a series of contact holes for gate wiring connection terminals (211) along the left edge, and a series of contact holes for source wiring connection terminals (212) along the top edge, formed in the fourth photolithographic claim step. A5951-52 ¶ 32; A5962-63 ¶ 20.

Similarly, during prosecution of original claim 8, the Examiner at the United States Patent and Trademark Office ("PTO") relied on prior art that disclosed a contact hole for each of the source wiring and gate wiring connection terminals.

*See* A6004-07 at A6006; *see also* A6101 at Takizawa, Fig. 1 (32c, 32d). The applicant did not distinguish the claimed contact holes for connection terminals from the prior art, and the Examiner did not raise any indefiniteness issue concerning the term "a contact hole for source wiring and gate wiring connection terminals." *See id.* Instead, the Examiner allowed the claim, noting that there was no teaching or suggestion in the prior art of record "to form contact holes reaching to the gate wiring, drain electrode, source wiring and gate wiring connection terminals." A6006.

## IV. The Reexamination Proceedings Concerning the '958 Patent

After Eidos filed this lawsuit, a petition requesting an *ex parte* reexamination of the '958 Patent was granted in August 2011. A6056-57. The requester argued that claim 1 was invalid because, with respect to the G8 step, the prior art disclosed: (i) a contact hole reaching the drain electrode, (ii) a contact hole for the source wiring connection terminal, and (iii) a contact hole for the gate wiring connection terminal.[6] A5948 ¶ 22 (citing A6035-37) Thus, the requester identified a separate contact hole for each of the connection terminals.[7]

---

[6] In its petition, requester also argued that the contact hole reaching the gate wiring was the same as the contact hole for the gate wiring connection terminal. This argument was ultimately rejected by the PTO and again by the district court during claim construction. *See* A6157-58; *see also* A1664-65.

[7] The requester annotated Figure 2(d) of a prior art reference (Matsumoto). A6036-37. The annotations identify a separate contact hole for each of the source

In considering the request for reexamination, the panel of examiners also discussed how to interpret the connection terminal contact holes in the G8 claim step. The panel noted that, reading only the words "a contact hole for source wiring and gate wiring connection terminals," the claim might be interpreted as referencing one contact hole for both connection terminals. A6060-62. The panel concluded, however, that this is not what the claim means. Instead, the panel read the claim in context, as one of ordinary skill in the art, as meaning "separate contact holes for the source wiring and gate wiring connection terminals." A6061. This was the PTO's independent reading of the claim, before Eidos had proposed any construction to the PTO. Thus, on its own, the panel read the claim as referring to a separate contact hole for each of the connection terminals. Subsequently, the panel again confirmed this reading of separate contact holes for the source wiring and gate wiring connection terminals. *See* A6077-80.

The patentee agreed with the panel's construction that the claim means a contact hole for each of the connection terminals. Specifically, the patentee confirmed that the claimed G8 step requires: "(1) one contact hole to reach the gate wiring; (2) one contact hole to reach the drain electrode; (3) one contact hole for the source wiring connection terminal; and (4) one contact hole for the gate

wiring and gate wiring connection terminals. *Id*. This is consistent with the prior art practice of forming separate contact holes for connection terminals. A5948 ¶ 22 (citing A6037).

wiring connection terminal." *See* A6122-23. In addition, the patentee's

reexamination expert, Dr. Gary Rubloff, confirmed that one of ordinary skill in the

art would understand the claim language to mean forming four types of contact

holes, including separate holes for each of the connection terminals. *See* A6135-36

¶¶ 15, 18.

On April 9, 2012, the PTO reaffirmed the validity of claim 1, as issued. *See*

A6157-58.

## V.    Defendants Represent that "A Contact Hole for Source Wiring and Gate Wiring Connection Terminals" Is "Easily Understandable"

The court set an August 10, 2012 deadline for the parties to either:

(1) request an early *Markman* hearing and summary judgment, or (2) request to file

a motion for summary judgment of indefiniteness.[8] *See* A451. Defendants did not

request to file a summary judgment motion on indefiniteness.

Instead, Defendants requested early claim construction for the term "a

contact hole for source wiring and gate wiring connection terminals." *See* A805-

09. Defendants argued that this "claim language is not ambiguous" and "is easily

understandable and requires no construction." A806. By reading the last portion

of the G8 step in isolation, Defendants asserted that the claim should require a

"common" contact hole for both source wiring connection terminals and gate

---

[8] Any such motion for summary judgment had to be filed by December 14, 2012.
A450.

wiring connection terminals. Based on this proposed construction, Defendants alleged that they do not infringe the '958 Patent. *Id.* Eidos opposed the request for early claim construction, noting that Defendants' myopic reading is improper and raises fact issues for discovery. A819-24. The district court denied Defendants' request for early claim construction. A825.

## VI. The Parties Propose Constructions for "A Contact Hole for Source Wiring and Gate Wiring Connection Terminals" and No Party Asserts that this Term Is Indefinite

In July 2012, the parties identified "a contact hole for source wiring and gate wiring connection terminals" as a term to be construed.[9] *See, e.g.*, A1044-46. The parties later filed a chart proposing constructions for this term prior to claim construction briefing, A893-95, and again after briefing was completed, A1623. Eidos proposed that "a contact hole for source wiring and gate wiring connection terminals" means "an opening for a source wiring connection terminal and an opening for a gate wiring connection terminal." *See* A931-35; A1623. Defendants argued that the words, standing alone, could be construed to have a literal or "[p]lain meaning, which is one passivation layer opening for source wiring and gate wiring connection terminals." A1623. In their claim construction briefing,

---

[9] In connection with claim construction, the court set a deadline of January 24, 2013 for parties to identify any terms to be construed or purported to be indefinite. A902. No term was identified as indefinite.

Defendants again emphasized that the claim language is "clear and unambiguous." A1313-14.

### A. The Magistrate Judge Defers Construing the Term Concerning Contact Holes for Connection Terminals as not "Ripe"

On January 31, 2013, the Magistrate Judge conducted a *Markman* hearing. The Defendants did not argue that "a contact hole for source wiring and gate wiring connection terminals" is indefinite. Defendants argued that "[t]here's no dispute that the claim language we have here, Your Honor, is unambiguous, it's not complex, it's easy to understand." A1692. At the beginning of the hearing, the Magistrate Judge handed out tentative constructions for the disputed claim terms. *See* A1653-55. The Magistrate Judge used the tentative constructions to focus the parties' arguments at the hearing.

The court tentatively construed "a contact hole for source wiring and gate wiring connection terminals" to mean "a third opening for source wiring and gate wiring connection terminals." A1653-54. The Magistrate Judge, however, was uncertain about this tentative construction and discussed that the G8 step could mean "patterning it at this point to create four holes." A1675-76. The Magistrate Judge also stated that "this hole is for source wiring and gate wiring connection terminals, *if you just read it on its face*." A1677 (emphasis added).

Eidos explained that one of ordinary skill in the art would understand that the claim means to form separate holes for the connection terminals. A1676.

Eidos pointed out that the specification, particularly column 31 and the "D" embodiment, confirms that the claim term "a contact hole for source wiring and gate wiring connection terminals" means "a contact hole [] for a source wiring connection terminal and a contact hole for a gate wiring connection terminal." A1678-82; *see also* A108 at 31:50-53. Eidos further explained that while the fourth photolithographic step involves patterning four separate types of contact holes, during the manufacture of an array, "thousands of contact holes [] are formed during this same step." A1676.

The Magistrate Judge recognized that Eidos had "basically identified four categories of openings." A1682. Further, the Magistrate Judge understood that Eidos' argument "is premised on the idea that [a] source wiring connection terminal is a structure in and of itself and a gate wiring connection terminal is a structure in and of itself. I guess that's where you come in with this one of ordinary skill would read it that way." A1701. The Magistrate Judge agreed that the claim could be read "to say this is a hole for one structure, source wiring, and we're also talking about a hole for gate wiring. They're two different things." A1708.

In April 2013, the Magistrate Judge issued an order construing most of the disputed terms. *See* A2013-27. The court concluded that "a contact hole" for the connection terminals means "one or more" contact holes and noted "there is no

dispute that thousands of contact holes would be made using step G8." A2020-21. The Magistrate Judge further noted that "a" contact hole is not limited to using the *same* contact hole for both source wiring and gate wiring connection terminals. A2020-21.

The court rejected Defendants' argument that the "plain meaning" of the G8 step is to form a common contact hole for source wiring and gate wiring connection terminals. *Id.* The court noted that there is no "support in the specification for a common contact hole for both the source wiring and gate wiring connection terminals," as argued by Defendants. A2023. The Magistrate Judge declined, however, to construe this claim term. The court deferred this claim construction dispute as not "ripe," stating that the "dispute presented centers around theories of invalidity pursuant to 35 U.S.C. § 112." *Id.*

**B.     The Magistrate Judge's Claim Construction Order Is Adopted**

Defendants filed objections to the claim construction order and moved for reconsideration, arguing that "the literal, plain, and ordinary meaning" is a common contact hole. A2091-92. Eidos noted that it was appropriate to defer construction of this term so that the parties' experts could address how one of skill would understand this term. A2178-79. The district court overruled Defendants' objections, denied reconsideration, and adopted the Magistrate Judge's claim

constructions.[10]  A2441-42.  Thus, the district court left open the construction of

the term concerning contact holes for the connection terminals.[11]  *Id.*

**VII.  Summary Judgment of Indefiniteness Is Entered, Despite Evidence Showing the Understanding of One Skilled in the Art**

On September 5, 2013, the Magistrate Judge ordered briefing on whether the

term is definite, limiting each opening brief to ten pages.  A4776-77.  Defendants

filed a motion for summary judgment of invalidity for indefiniteness, A5638-54,

which was fully briefed, *see* A5922-36; A6232-44; A6245-52.  In its opposition,

Eidos noted that Defendants' three technical experts, Mr. Roger Stewart, Dr. Aris

Silzars, and Dr. Jerzy Kanicki, did not believe that the disputed term is indefinite.

A5929-32.

---

[10] The district court clarified that the term "connection terminals" should be construed as "conductive material for electrical connection to source wiring and/or gate wiring" based on the parties' agreement during the *Markman* hearing.  *See* A2441; *see also* A1741-42.

[11] In August 2013, months later, CMI proposed a new construction for this term in an attempt to argue non-infringement.  A3878-81 at A3879.  CMI asked that the court construe "patterning . . . to form . . . a contact hole for source wiring and gate wiring connection terminals" to mean "patterning . . . to form a contact hole for source wiring and to form gate wiring connection terminals."  A3879.  Eidos opposed this construction as requiring gate wiring connection terminals, construed as conductive material for electrical connection to gate wiring, to be formed from the passivation layer which is an insulator.  A4536-40; A4594-98.  AUO and HannStar also opposed this construction.  A4677-81.  The court rejected CMI's new construction.  A4776.

Mr. Stewart focused on "the literal meaning of the language 'patterning . . . to form . . . a contact hole for source wiring and gate wiring connection terminals.'" *See* A5929-30 (quoting A6170 ¶ 36); *see also* A5932 (quoting A6197 ¶ 140 (Dr. Silzars' expert report stated that "it is my opinion that the plain meaning of claim 1 is clear")). Mr. Stewart agreed that "it was common practice to form separate contact holes for the source connection terminal and gate connection terminal at the time of filing the '958 patent." A6216-17 at 24:22-25:2. Further, he testified that this was known by persons skilled in the art. A6216 at 23:20-24:3. Mr. Stewart also testified that he is not aware of any publication supporting a "common" contact hole for both connection terminals. A6217 at 25:9-13.

Eidos submitted two expert declarations, from Dr. Elliott Schlam and Dr. Bruce Smith, explaining that one of ordinary skill would understand the claim to require a contact hole for each of the source wiring and gate wiring connection terminals, including because:

1. It was well-known, in academia and in industry practice, to form separate contact holes for the source wiring and gate wiring connection terminals, A5943-44 ¶ 5; A5956-57 ¶¶ 3-4 (citing A6216-19 at 23:16-19, 44:23-45:1), and it was not known to use a common contact hole for those connection terminals in LCD devices, A5943-44 ¶ 5; A5956-57 ¶ 4 (citing A6218 at 44:14-22).

2.     The parent application contained numerous claims, including original claims 5 and 8 related to the "D" and "G" embodiments, respectively, that consistently used the term "a contact hole for source wiring and gate wiring connection terminals."  A5946-47 ¶ 18.  A person of ordinary skill would understand that this identical claim language would have the same meaning. A5946-47 ¶¶ 18, 20; A5963-64 ¶ 22.  The "D" embodiment explains that during the fourth photolithographic step, a contact hole for the source wiring connection terminal is formed at the same time that a separate contact hole for the gate wiring connection terminal is formed.  A108 at 31:42-57.  A person of ordinary skill would understand that this meaning applies equally to the "G" embodiment. A5947 ¶¶ 19-20; A5961-64 ¶¶ 19, 22.

3.     The reexamination record confirms that claim 1 describes forming a contact hole for each of the connection terminals.  A5948-49 ¶¶ 21-26 (citing A6037, A6060-62, A6080, A6122-23, A6135-36); A5961¶ 18.

4.     Defendants' experts do not assert that the claim is indefinite or cannot be understood by one of skill in the art.  A5949-51 ¶¶ 27-31; A5955-56 ¶ 2.

5.     The prior art confirms the use of separate contact holes for each connection terminal.  A6181-82 ¶¶ 109-110.  Defendants' expert Mr. Stewart is not aware of any prior art anticipating claim 1 based on Defendants' "common" contact hole construction.  A5959-60 ¶14 (citing A6175 ¶ 77).  Mr. Stewart also

stated that the Matsuda reference anticipates claim 1 and shows separate contact holes for the source wiring connection terminal and the gate wiring connection terminal, identifying those separate structures as 17b and 17c in Figure 8B of Matsuda. A5960 ¶ 16 (citing A6181-82 ¶¶ 109).

Defendants did not submit any expert declarations in response. Defendants only submitted excerpts from expert reports discussing how one could read the purported "literal" words of the claim. A5643-44 (citing A6170 ¶ 36; A5676 ¶ 95; A6191-92 ¶ 24; A5689-90 ¶ 79). In addition, Defendants' experts did not assert that the claim is indefinite or that one of ordinary skill could not reasonably understand the scope of the claim.

### A. The Magistrate Judge's Report Confirming that a Contact Hole for Each Terminal Is a Reasonable Claim Construction

Without a hearing, and one month before trial, the Magistrate Judge issued a Sealed Report and Recommendation concerning Defendants' motion for summary judgment of invalidity ("Report").[12] A23. The Report acknowledged "that Eidos' construction is a reasonable option" for construing the claim. A33. The Report also rejected Defendants' proposed construction, noting that the specification does

---

[12] The parties agreed that this Report does not include any confidential information and Eidos filed an unopposed motion to unseal this Report and other documents, which the court granted on April 23, 2014. A12952.

not support "a common contact hole for both the source wiring and gate wiring connection terminals." A31.

The Report did not make any findings as to what knowledge one of ordinary skill would have regarding contact holes for connection terminals, the industry practice of using separate contact holes, or whether one of skill would understand the claim language and what that understanding would have been at the time of the invention in 1994. Focusing on the "G" embodiment of the patent rather than the entirety of the specification including the "D" embodiment, the court declined to "guess" at the meaning of the claim. A34. The Report recommended granting summary judgment of invalidity for indefiniteness. *Id*.

**B.** **The District Court's One-Page Order Granting Summary Judgment of Invalidity for Indefiniteness**

Eidos objected to the Report, citing legal, factual, and analytical errors:

1. failing properly to apply the indefiniteness standard and not reading the claim based on the knowledge and perspective of one of ordinary skill, *see* A9070; A9080-89;

2. misapprehending the intrinsic evidence and failing to recognize that the specification and reexamination record each confirm that the G8 claim step involves forming a contact hole for each of the connection terminals, A9070; A9089-92; and

3.      failing to credit Eidos' expert declarations, which explained the claim and the patent as understood by one skilled in the art, and established that there was no clear and convincing evidence of indefiniteness; at the very least, factual issues precluded summary judgment, A9070-71; A9092-95.

Eidos also submitted additional declarations from its two experts, confirming that one of skill would understand the claim language, and discussing the relevant intrinsic evidence and knowledge in the field.  *See, e.g.*, A9101-14; A9116-26.  The experts again testified that one of skill, reading the patent and with knowledge in the art, would understand that the G8 step involves forming a contact hole for each of the source wiring and gate wiring connection terminals:

1.      A person of skill could not only "fashion" this meaning, as the Report suggested, but would easily understand this meaning in the G8 step and the specification.  A9102-03 ¶ 3; A9117-18 ¶ 3.

2.      As stated in their previous declarations: (a) at the time of the application, it was well-known to form separate contact holes for the connection terminals, no prior art shows a common contact hole, and separate contact holes is not an inventive, novel aspect of the claim, *see* A9102-11 ¶¶ 3, 4, 15; A9117-19 ¶¶ 3-4; A9106-07 ¶ 8; (b) the specification discloses separate contact holes for each of the connection terminals and it would be understood that there is no relevant difference between the D8 step and G8 step or their corresponding

embodiments, *see* A9107-11 ¶¶ 9-14; A9120-25 ¶¶ 5-6, 9-11; and (c) the reexamination record further confirms that the G8 step refers to a separate contact hole for each of the connection terminals, A9110-13 ¶¶ 14-18; A9122-23 ¶ 7.

    3.    A person of ordinary skill would understand that the '958 Patent describes patterning 1,600 small contact holes for connection terminals. A9104-05 ¶ 6 (citing A94 at 4:2-6). The area of each contact hole connection portion is $7 \, \mu m^2$, smaller than a human hair, requiring a contact hole for each of the connection terminals and precluding one large "common" contact hole for both terminals. *Id.*

    The district court issued a one-page order summarily overruling Eidos' objections and stating, without any specific factual findings, that "the conclusion of the Magistrate Judge is correct." A22C.

## SUMMARY OF THE ARGUMENT

    To overcome the presumption of validity, Defendants must prove invalidity "*by facts* supported by *clear and convincing evidence*." *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1367 (Fed. Cir. 2000) (emphasis added). To prove indefiniteness, Defendants must *factually prove,* by clear and convincing evidence, that one of ordinary skill, with knowledge in the field, would not understand the G8 claim step. *See Elcommerce.com, Inc. v. SAP AG*, 745 F.3d 490, 505-06 (Fed. Cir. 2014); *see also Budde v. Harley-Davidson, Inc.*, 250 F.3d

1369, 1376 (Fed. Cir. 2001).  Defendants did not provide any such *factual evidence* of indefiniteness, much less clear and convincing evidence.  Instead, they relied on attorney argument to manufacture a dispute by reading a few words in isolation, contrary to the law and ignoring the knowledge of one skilled in the art.  The court rejected Defendants' construction, as there is no support anywhere in the specification for a "common" contact hole construction.  A2023.  Defendants' construction, moreover, is unreasonable as it is contrary to the patent's disclosure and practice in the art.

Definiteness must be analyzed from the perspective of a person skilled in that art.  The district court did not make, however, any finding that one of ordinary skill would not understand the claim.  Indeed, there is no evidence in this record to have supported such a finding.  "Findings as to what is known, what is understood, and what is sufficient, *must be based on evidence.*"  *Elcommerce.com*, 745 F.3d at 506 (emphasis added).  None of Defendants' experts ever asserted that the claim language is indefinite.  Further, it is undisputed that a person of skill would know, in ordinary LCD manufacturing, that a contact hole is formed for each of the source wiring and gate wiring connection terminals.

The district court substituted its own uncertainty in place of the knowledge of one skilled in the art, ignoring controlling law:

- A claim is definite when one of skill, with knowledge in the art, understands the meaning of the claim[13];

- Definiteness is based on the knowledge and understanding of one skilled in the art, not the court's own knowledge, and a patent thus does not need to explain what is already known in the art[14]; and

- A claim is presumed valid and definite, and only clear and convincing evidence of indefiniteness can overcome this presumption, which requires actual evidence and not mere attorney argument.[15]

The G8 step satisfies the definiteness requirement of 35 U.S.C. § 112. As a matter of law, the claim should be construed to cover a contact hole for each of the source wiring and gate wiring connection terminals. This is how one of ordinary skill would reasonably understand the claim. This is the only reasonable construction. Even if Defendants had submitted any evidence that one of skill would not understand this claim, which they did not, a factual dispute would exist that would preclude summary judgment. *See TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1343 (Fed. Cir. 2010).

---

[13] *See, e.g., Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1352 (Fed. Cir. 2009).

[14] *See, e.g., Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1367 (Fed. Cir. 2011).

[15] *See, e.g., Elcommerce.com, Inc.*, 745 F.3d at 506.

# ARGUMENT

I.   **This Court Reviews De Novo Whether Defendants Proved, by Clear and Convincing Evidence, that Claim 1 Is Indefinite**

   A.   **The Standard of Review**

A grant of summary judgment for indefiniteness is reviewed de novo. *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008). Definiteness is a "question[] of law with underlying factual determinations," *Green Edge Enterprises, LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1299 (Fed. Cir. 2010), reviewed without deference to the trial court, *see Wellman*, 642 F.3d at 1365. This Court reviews a summary judgment, moreover, under the law of the regional circuit and applying the same standard as the district court. *See Raytheon Co. v. Indigo Sys. Corp.*, 688 F.3d 1311, 1315 (Fed. Cir. 2012); *see also Braintree Labs., Inc. v. Novel Labs., Inc.*, No. 2013-1438, 2014 WL 1584451, at *6 (Fed. Cir. Apr. 22, 2014). Further, the evidence is viewed in the light most favorable to Appellants, as the non-moving parties. *See Raytheon Co.*, 688 F.3d at 1315.

   B.   **The Defense of Indefiniteness Requires Clear and Convincing Evidence that One of Skill Cannot Understand the Claim**

A movant seeking summary judgment on an affirmative defense, such as indefiniteness, "'must establish beyond peradventure *all* of the essential elements of the . . . defense to warrant judgment in his favor.'" *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003) (quoting *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002)). This regional circuit law governs this Court's

30

review of a summary judgment.  *See Raytheon Co.*, 688 F.3d at 1315.  Defendants

cannot meet their heavy burden, and the summary judgment is contrary to Fifth

Circuit law and this Court's precedent.

An "exacting standard" must be met to prove that a patent is invalid for

indefiniteness.  *Wellman*, 642 F.3d at 1366 (quoting *Haemonetics Corp. v. Baxter

Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010)).  "Because a patent is

presumed to be valid, the evidentiary burden to show facts supporting a conclusion

of invalidity is one of clear and convincing evidence."  *Young v. Lumenis, Inc.,* 492

F.3d 1336, 1345 (Fed. Cir. 2007).

To prove indefiniteness, a party must "demonstrate by clear and convincing

evidence that one of ordinary skill in the relevant art could not discern the

boundaries of the claim based on the claim language, the specification, the

prosecution history, and the knowledge in the relevant art."  *Wellman*, 642 F.3d at

1366 (quoting *Haemonetics*, 607 F.3d at 783).  A claim is definite if one of

ordinary skill, with the relevant knowledge in the field, understands the meaning of

the claim.  *See Ultimax Cement Mfg. Corp.*, 587 F.3d at 1352; *Young,* 492 F.3d at

1346.

## II.   Defendants Introduced No Evidence that a Person of Skill Would Not Understand the Scope of the Claim, and Even if Such Disputed Evidence Had Existed, Summary Judgment Would Be Improper

To be definite, a patent specification is required to conclude with one or more claims "particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  35 U.S.C. 112 ¶ 2 (2006).  "A claim satisfies the definiteness requirement of § 112 '[i]f one skilled in the art would understand the bounds of the claim when read *in light of the specification*.'" *Praxair*, 543 F.3d at 1319 (emphasis added) (quoting *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001)).  Here, the specification is *unambiguous* and *supports only one construction*:  the formation of a contact hole for each of the connection terminals.

Defendants have never pointed to any passage anywhere in the specification—or identified any prior art—that describes a common contact hole for connecting to both source wiring and gate wiring connection terminals.  *See, e.g.,* A5956-61 ¶¶ 4, 14, 16-17 (citing A6218 at 44:14-22; A6175 ¶ 77).  Crucially, moreover, no expert has testified that one of skill would not reasonably understand the claim.  *See, e.g., Typhoon Touch Techs. Inc., v. Dell, Inc.,* 659 F.3d 1376, 1385 (Fed. Cir. 2011) ("The defendants have directed us to no evidence that [a person of skill] would not understand how to implement this function.").  Conversely,

Defendants argued that prior art showing separate contact holes for the connection

terminals anticipates claim 1, which is contrary to indefiniteness.[16]

### A. The Unrebutted Evidence Is that a Person of Ordinary Skill in the Art Would Easily Understand the G8 Step

#### 1. A Person of Skill Would Understand the Claim Scope With Reasonable Certainty

Eidos presented unrebutted evidence showing the knowledge and

understanding of a person of ordinary skill.  This evidence confirmed that one of

skill would easily understand the claim and would not need to "fashion" a meaning

as the Court suggested.  *See* A33.  Dr. Schlam, with more than forty years of

experience in this field, *see* A5944 ¶ 8 (citing A5967), explained that the

specification and the prosecution history clearly support that the claim means a

contact hole for each of the source wiring and gate wiring connection terminals,

A5946-47 ¶¶ 17-18 (citing A5990-6001).  As Dr. Schlam testified, "patterning

separate contact holes for source wiring and gate wiring connection terminals was

at the time of the invention, and is still today, well understood by a person of

---

[16] Defendants argued that the claim is invalid as anticipated or obvious.  *See* A6176-84 ¶¶ 91, 100, 109, 113, 115.  Defendants' invalidity expert, Mr. Stewart, explained that prior art (Matsuda) shows separate contact holes for the source wiring connection terminal and the gate wiring connection terminal, corresponding to the contact hole for connection terminals in the G8 step of claim 1.  A5960-61 ¶ 16; A6181-82 ¶¶ 109-110.  This argument is fundamentally inconsistent with Defendants' assertion of indefiniteness, as "a claim cannot be both indefinite and anticipated."  *Enzo Biochem v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010).

33

ordinary skill in the art, and was at the time of the invention, and is still today, the standard practice in the LCD industry."  A9102 ¶ 3.  Similarly, Dr. Smith, with nearly thirty years of experience in this field, *see* A5956-58 ¶¶ 4, 7 (citing A5973), explained that he has never "seen prior art in the original and reexamination prosecution histories that disclose a common contact hole" and that he is "not aware of anyone in academia or industry ever describing or manufacturing LCDs with one common contact hole." A5956-57 ¶ 4.

Dr. Schlam further explained that the discussion of the identical claim language in originally filed claim 5 and the "D" embodiment reinforces the understanding of separate contact holes for source wiring and gate wiring connection terminals.  A5947 ¶ 20.  Likewise, Dr. Smith testified that a person of ordinary skill, reviewing the "D" embodiment and "G" embodiment, would understand that "a contact hole for source wiring and gate wiring connection terminals" in the G8 step means a contact hole for each of the connection terminals.  A5963 ¶ 22 ("[S]eparate contact holes for connection terminals were routinely practiced at the time of the invention, not a common contact hole."). Similarly, Dr. Rubloff, with more than thirty-five years of experience in this field, A6134 ¶ 4, confirmed during reexamination that the fourth photolithographic step (G8) means to form a contact hole for each of the source wiring and gate wiring connection terminals, A6135-36 ¶¶ 15, 18.

Defendants offered *no evidence* that one of skill would not understand the claim. This absence of evidence compels reversal of the district court's summary judgment of indefiniteness. *See Elcommerce.com*, 745 F.3d at 505-06. In *Elcommerce.com*, this Court vacated a ruling of indefiniteness that was based on attorney argument rather than "evidence of the knowledge and understanding of the relevant technology by persons of skill in the field of the invention." *Id.* at 493. This Court also reaffirmed that Section 112 does not require the specification to be "encumber[ed]" with "information known to a person of skill." *Id.* at 503 (similarly, the specification does not need to "reproduce information routinely possessed by persons in the field").

### 2. Defendants Did Not Rebut Eidos' Evidence Concerning the Knowledge of a Person Skilled in the Art

None of the Defendants' three experts ever testified or asserted that the claim term at issue is indefinite or would not be understood by one of skill in the art. Further, the Defendants' experts do not—and cannot—dispute that reading the claim language as referring to separate contact holes for the connection terminals comports with the industry practice known by a person of ordinary skill. *See, e.g.*, A6216-17 at 24:22-25:2.

Defendants' experts merely attempted to rely on the purported literal words of the claim, read in isolation and out of context, and thus not from the perspective of a person of ordinary skill in the art. Mr. Stewart essentially conceded as much

in noting that his purported "literal" reading of the claim "*might be in error*." A32 (citing A5660-61 ¶¶ 37-38) (emphasis added). Moreover, this "literal" reading is mere background in a section of Mr. Stewart's expert report titled "OVERVIEW OF THE '958 PATENT," *see* A5657-61, and reads the words out of context: "I understand the *literal* meaning of the language" and "A POSITA would also understand this *literal language*," A5660 ¶ 36 (emphasis added). This reading is misplaced and Mr. Stewart's report does not support that the claim is indefinite, nor does it comport with claim construction law or evidence.

Similarly, Defendants' expert Dr. Silzars never opined that the claim is indefinite. In fact, Dr. Silzars agreed with the district court that the patent does not "expressly show a single contact hole for source wiring and gate wiring connection terminals," but merely suggested that this is how he would read the claim language in isolation. A5676 ¶ 95. The Report fails to cite this concession, instead citing Dr. Silzars' discussion of a *different issue*. Specifically, the Report cites to paragraph 208 of Dr. Silzars' rebuttal report. *See* A32 (citing A5677-78 ¶ 208). Paragraph 208, however, does not address contact holes for the connection terminals. A5677 (disputing the district court's conclusion that the claim refers to different contact holes for the *gate wiring* and the gate wiring connection terminal). Thus, paragraph 208 does not address the relevant claim limitation and cannot support summary judgment of invalidity.

CMI's expert, Dr. Jerzy Kanicki, likewise did not opine that the claim is indefinite. Instead, he merely stated that the disputed claim language is not expressly discussed in two of the embodiments in the patent ("D" and "G").[17] A5684 ¶ 23. Dr. Kanicki then "offer[ed] an alternative construction" based on the purported "literal" wording of the claim.[18] *Id.* ¶ 24. This contrived construction was properly rejected, as it would require electrically *conductive* gate wiring connection terminals to be formed from *insulating* passivation material. *See* A4539; *see also* A4776. Dr. Kanicki does not attempt to opine that one of skill would actually read the claim in such a way; nor does he suggest that the claim is indefinite.[19]

3.     **The Court Implicitly Shifted the Burden To Eidos, Contrary to the Presumption of Validity.**

Although Defendants have the burden of proof, the Report improperly shifted that burden to Eidos. The Report concludes that "the intrinsic record fails

---

[17] It is not necessary for the "G" embodiment to have reiterated the description of "a contact hole for a source wiring connection terminal and a contact hole for a gate wiring connection terminal," as the "D" embodiment expressly addresses those structures and the meaning of the corresponding identical claim language.

[18] *See supra* note 11 (Dr. Kanicki's alternative construction is the same construction CMI proposed in its letter brief requesting for summary judgment). The court properly rejected this construction. A4776.

[19] Dr. Kanicki's expert report includes an opinion concerning written description, but does not include any opinion that the claim is indefinite, and this written description opinion assumes that the district court is able to construe the claim. A5701-02.

to indicate which construction is correct" and that *Eidos* was "unable" to "resolve the ambiguities" and provide a "compatible" construction.  A28; A33-34.  This statement ignores both the presumption of validity and that Eidos provided the only reasonable construction.

The district court's error presumably resulted from its own lack of understanding or experience in this technology.  As this Court noted in *Elcommerce.com*, while courts construe claims, "it cannot be assumed that judges are persons of ordinary skill in all technological arts."  *Elcommerce.com, Inc.*, 745 F.3d at 506; *see also id.* at 503 (noting that "'typically' expert testimony will be necessary in cases involving complex technology"); *Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1119 (Fed. Cir. 2002) (confirming importance of extrinsic evidence to analyze indefiniteness).  "Nor can it be assumed that, without evidence, a general purpose judge could ascertain the position of persons of skill in the art and conclude that there is not a shred of support" in the specification. *Elcommerce.com, Inc.*, 745 F.3d at 506.

Indefiniteness requires clear and convincing *evidence*.  This evidentiary burden is on defendants, "and in the absence of evidence provided by technical experts who meet the *Daubert* criteria there is a failure of proof."  *Id.*  A clear failure of proof exists here, as Defendants provided *no expert evidence* (or other evidence) that the claim language is beyond the comprehension of a person of

ordinary skill.  The record not only reflects the absence of any such evidence, but the clear and convincing evidence is that the claim is easily construed.  As a matter of law, therefore, the record does not support a finding of indefiniteness.

### B.  The Evidence Establishes that the G8 Step Means Forming A Contact Hole for Each of the Connection Terminals

Nothing in the patent suggests that the G8 step deviates from the well-known practice of forming a contact hole for each of the source wiring and gate wiring connection terminals.  This was not novel, nor is it ambiguous from the perspective of one skilled in the art.  *See* A9131-32 at 69:6-70:16.  The district court thus erred in assuming that one of ordinary skill would need more guidance in the "G" embodiment to understand the claim language.  *See, e.g., Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1338 (Fed. Cir. 2008); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1556-57 (Fed. Cir. 1983).

The Magistrate Judge specifically observed that, during prosecution, "there was no clear disavowal by the patentee that would overcome the presumption that 'a' in the context of comprising claim 1 means 'one or more.'"[20]  A2020.  The court also noted that using "a" to mean more than one "is not surprising as there is

---

[20] As a matter of law, "a" can mean more than one.  *See, e.g., Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 977 (Fed. Cir. 1999).  In *Elkay*, for example, the claim language facially could be read, in isolation, to suggest a combined structure, i.e., a "single feed tube with a single flow path."  *Id.*  This Court noted, however, that the claim used the open term "comprising" and so the "plain meaning" was "not necessarily limited to a single feed tube with a single flow path."  *Id.*

no dispute that thousands of contact holes would be made using step G8." A2021. Further, the court noted that the word "a" before "contact hole" does not mean that "the same" contact hole is used for both terminals. *Id.* Accordingly, the Magistrate Judge properly rejected Defendants' argument that the claim plainly means a "common hole" for source wiring and gate wiring connection terminals. *Id.* The Magistrate Judge also explained that construing the claim to mean separate holes would not impermissibly "rewrite" the claim, as Defendants argued in reliance on *Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004). A2021-22.

The Magistrate Judge distinguished the *Chef America* case. *Id.* The last term in the G8 step is readily and reasonably understood to mean a contact hole for each of the source wiring and gate wiring connection terminals. A33 (Magistrate Judge acknowledging that this is a reasonable construction). As the Magistrate Judge noted, in the G8 step "a contact hole" is used to introduce *each* type of connection terminal—source wiring terminals *and* gate wiring terminals. A2022 (distinguishing *Chef America*).

Eidos also submitted overwhelming evidence from persons of skill in the art, based on their experience and the intrinsic evidence, supporting this construction. A5942-53; A5955-65; A9101-14; A9116-26. Defendants, moreover, repeatedly conceded that the term can be understood and should be construed: (a) before the

40

*Markman* briefing, *see* A805 (early Markman letter); A895 (joint claim construction chart); (b) during the *Markman* briefing, A1313; (c) at the *Markman* hearing, A1692; and (d) after the *Markman* hearing, A2091-92. Defendants continued to argue that the claim language should be construed in their summary judgment motion regarding indefiniteness. A5648. Thus, the last G8 step term presents a straightforward issue of claim construction that does not make the claim term indefinite. *See, e.g.*, *Praxair*, 543 F.3d at 1319; *Verve*, 311 F.3d at 1120.

1.   **The District Court Agreed that Separate Contact Holes for the Connection Terminals is a Reasonable Construction**

The Magistrate Judge acknowledged "that Eidos' construction is a reasonable option." A33. This meaning would be reasonably understood by one of skill, and the claim is thus definite. *See, e.g.*, *Hearing Components, Inc. v. Shure Inc.*, 600 F.3d 1357, 1366-67 (Fed. Cir. 2010); *Energizer Holdings*, *Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370 (Fed. Cir. 2006) (claim not indefinite, despite lack of explicit antecedent basis for "said zinc anode," because scope was reasonably ascertainable by one skilled in the art). Defendants' proposed construction finds no support in the specification, A2023, or in the state of the art at the time of the invention, A6036-37.

When the court initially determined that this term was not "ripe" for construction, the court had not received any evidence from persons of skill in the art explaining their understanding of the patent and the G8 step. Eidos' experts

41

subsequently provided this evidence in several declarations explaining well-known industry practice and how persons of skill in the art at the time of the invention would understand the claim. Defendants' experts never disputed that forming a contact hole for each of the connection terminals was the well-known practice at the time of the invention, and the law requires that this knowledge be applied when construing the claim. *See Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1370 (Fed. Cir. 2003). "In construing patent claims, the court must apply the same understanding as that of persons knowledgeable in the field of the invention. Patents are written not for laymen, but for and by persons experienced in the field of the invention." *Id.* (internal citations omitted). Eidos' construction meets this standard, whereas Defendants' construction does not.

###### 2. Defendants' Unreasonable Argument for One Common Contact Hole Lacks Support and Was Properly Rejected

Defendants' proposed construction is unreasonable. As the court concluded, there is no "support in the specification for a common contact hole for both the source wiring and gate wiring connection terminals." A2023. Further, no expert has testified that Defendants' "common contact hole" construction is how one of skill, *applying his knowledge in the art*, would read the claim or specification.

The court below already has construed terms relevant to the G8 step, including "a," "contact hole," and "connection terminals." *See* A2021; *supra* notes 2-3. The court also recognized that separate contact holes for the connection

42

terminals is a reasonable construction for the last term of the G8 step. A33. The evidence, in fact, makes this the *only reasonable construction*: (1) the specification clearly describes that the claim term "a contact hole for source wiring and gate wiring connection terminals" means "a contact hole [ ] for a source wiring connection terminal and a contact hole for a gate wiring connection terminal," *see infra* Argument Section III(A); (2) the unrebutted expert declarations confirm that one of skill in the art, applying their knowledge in the field, would understand the claim and specification to mean separate contact holes for each of the connection terminals, *see infra* Argument Section II(A); (3) the industry practice at the time of the invention, as shown in prior art, was to form separate contact holes for each connection terminal, A6036-37; (4) no expert for any party is aware of any prior art using the same contact hole for both types of connection terminals, *see* A5956-57 ¶ 4; A5959-60 ¶14 (citing A6175 ¶ 77); A6217 at 25:9-13; and (5) the panel of examiners and the patentee repeatedly confirmed, in the reexamination proceedings, that the claim language means separate contact holes for each connection terminal, *see infra* Argument Section III(B).

### C. The Parties' Claim Construction Dispute Is Not Evidence of Indefiniteness

"A claim is not indefinite merely because parties disagree concerning its construction." *Haemonetics*, 607 F.3d at 783. "Patent disputes often raise close questions requiring refinement of technical definitions in light of particular facts."

*Verve*, 311 F.3d at 1120. The trial judge is "obligated to decide between contending positions" and "the fact that the parties disagree about claim scope does not of itself render the claim invalid." *Id.*

### D. Even if Defendants Had Introduced Any Evidence of Indefiniteness, Issues of Fact Would Preclude Summary Judgment

Even if Defendants had offered evidence that one of skill could not understand the claim, which they did not do, at least a factual dispute would exist, precluding summary judgment. If material facts are disputed, summary judgment is improper. *See TriMed*, 608 F.3d at 1343. As this Court has stated, the definiteness of a claim "is amenable to resolution by the jury where the issues are factual in nature." *BJ Servs. Co. v. Halliburton Energy Servs., Inc.*, 338 F.3d 1368, 1372 (Fed. Cir. 2003). Further, as this Court has explained in the context of obviousness (also a question of law that may raise underlying facts), "the background knowledge of one of skill in the art" is a subsidiary factual question "reserved for the finder of fact." *TriMed*, 608 F.3d at 1341 (citing *Gen. Elec. Co. v. Nintendo Co.*, 179 F.3d 1350, 1363 (Fed. Cir. 1999)).

Thus, if a defendant submits evidence that one of skill cannot understand a claim, and a patentee counters that evidence, an issue of fact arises that must be determined by the fact-finder. Indeed, courts routinely deny summary judgment of indefiniteness where there is conflicting evidence as to whether one of ordinary

44

skill in the art would understand the claim. *See, e.g.*, *INVISTA N. Am. S.à.r.l. v. M&G USA Corp.*, 951 F. Supp. 2d 626, 655 (D. Del. 2013); *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. C 09-00355, 2011 WL 5974668, at *10 (N.D. Cal. Nov. 29, 2011); *Am. Med. Sys., Inc. v. Laser Peripherals, LLC*, 712 F. Supp. 2d 885, 912 (D. Minn. 2010). Defendants failed to submit evidence of indefiniteness, and, at most, such evidence could only have produced disputed fact issues.

## III. The District Court Erroneously Substituted Its Own Knowledge, Instead of Applying the Knowledge of One Skilled in the Art, as Confirmed by the Intrinsic Evidence

Instead of reading the claim from the perspective of one of skill in LCD manufacturing, the district court applied its own knowledge. Unlike one of skill in the art, the district court expected the specification description of the "G" embodiment to explicitly describe forming a contact hole for each of the connection terminals, as the "D" embodiment does. *See* A29-30. This analysis violates the fundamental principle of reading claims as one of ordinary skill; "the criterion is the meaning of words as they would be understood by persons in the field of the invention." *Verve*, 311 F.3d at 1119 ("[T]he patentee is not required to include in the specification information readily understood by practitioners, lest every patent be required to be written as a comprehensive tutorial and treatise for the generalist, instead of a concise statement for persons in the field.").

To construe the meaning of a claim term, "a court must consider what was known to one of ordinary skill." *Bayer AG v. Biovail Corp.*, 279 F.3d 1340, 1348 (Fed. Cir. 2002). The district court, however, did not analyze whether one of skill in the art would understand the claim. Instead, the district court mistakenly sought to "*arrive at a construction* that *would allow* a person of ordinary skill in the art *to determine*" what is claimed. A34 (emphasis added). Because the court erroneously applied only its own knowledge and focused only on the "G" embodiment, it was afraid to "guess" which construction to adopt. *Id.* But, one of ordinary skill in the art would not have to "guess" what the claim means.

This Court has not hesitated to reverse similarly erroneous indefiniteness decisions due to the failure to read claims from the perspective of one skilled in the art. *See, e.g., Elcommerce.com*, 745 F.3d at 505-06; *Typhoon Touch Techs.,* 659 F.3d at 1385-86 (patentee's "concession" that specification did not explicitly disclose algorithm did not make claim indefinite, as persons of skill would implement known operations); *Wellman,* 642 F.3d at 1368-69 (claim did not need to specify moisture conditions of "routine concern" to persons of skill in the art, who would know to apply industry standards); *Exxon*, 265 F.3d at 1383 (claim not fatally indefinite because one of ordinary skill would reasonably understand the term when read in context).

In *Bancorp Services*, for example, this Court reversed a judgment of indefiniteness because the district court erroneously failed to read the claim from the perspective of what would be known in the art. *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1375-76 (Fed. Cir. 2004). This Court criticized the district court's "flawed" analysis of the extrinsic evidence, as that evidence showed that the claim "would be understood by a person of skill in the pertinent art," even though the patent did not define the disputed claim term. *Id*. at 1374. This Court further noted that the patentee had submitted a supplemental expert declaration and other evidence showing that the meaning of the term would be clear to one of ordinary skill in the art. *Id*. at 1374-75. The district court's error here is more glaring: summary judgment was granted without any evidence that one of skill would not understand the claim and contrary to unrebutted evidence that the term would be reasonably understood to mean a contact hole for each of the connection terminals.

### A. The Specification Confirms that the Claim Language Means Forming A Contact Hole for Each of the Connection Terminals

The specification expressly discusses the formation of a contact hole for each of the connection terminals. Original claim 5, directed to the "D" embodiment, recites the same disputed language as in claim 1 ("a contact hole for source wiring and gate wiring connection terminals"). *See* A96 at 7:21-22. Describing the "D" embodiment, the specification explains (as one of skill in the

art would know) that this claim step involves etching the passivation film and other films to form a separate contact hole for each of the connection terminals:

> at the same time, a contact hole 132 for a source wiring connection terminal and a contact hole for the gate wiring connection terminal (formed above gate wiring 113 although not illustrated).

A108 at 31:49-53; A48 Fig. 36.

Defendants do not dispute that this embodiment specifically discusses forming separate contact holes for each connection terminal. A9141 (conceding that the "*text plainly describes in a D8 step forming 'a contact hole 132 for a source wiring connection terminal' and 'a contact hole for a gate wiring connection terminal,*' but in a different step (step D4) forming 'a contact hole 121 leading to the gate wiring.'") (emphasis added). The specification's explanation of forming separate contact holes for each connection terminal is specifically describing the step of forming "a contact hole for source wiring and gate wiring connection terminals." Despite this *identical claim language* in steps G8 and D8, the Court erroneously rejected the teachings of the specification explaining this claim language.

Figure 36 of the D embodiment, annotated and shown below, illustrates a contact hole (132) for the source wiring connection terminal.[21]  As explained in the specification (A108 at 31:50-53), a different contact hole for the gate wiring connection terminal is also formed above the gate wiring (113), although not illustrated in Figure 36.  Thus, Figure 36, corresponding to the D8 step, shows a separate contact hole for only the source wiring connection terminal, and not a common hole for source wiring and gate wiring connection terminals:



A48 (annotated).

_____

[21] Figure 32, corresponding to the D4 step, shows a separate contact hole (121) formed reaching the gate wiring in the D embodiment.  This hole (121), having already been identified in Figure 32, is not labeled in Figure 36.

Similarly, Figure 61 illustrating the G8 step, annotated and shown below, depicts a contact hole (212) for the source wiring connection terminal. Similar to Figure 36, moreover, Figure 61 does not illustrate the separate contact hole for the gate wiring connection terminal:



A57 (annotated).

Eidos' experts explained that one of skill in the art would understand that these embodiments, the specification, and these figures, confirm that the G8 step, as recited in Claim 1, means forming a contact hole for each of the connection terminals. A5947 ¶¶ 19-20; A5961-64 ¶¶ 19, 22.

As Dr. Schlam explained in his declaration, the specification teaches

forming separate contact holes for the connection terminals:

> The D embodiment claim language is identical to the claim language
> at issue regarding the G embodiment. Both specify the claim term in
> verbatim language: "a contact hole for source wiring and gate wiring
> connection terminals." Both the D and G embodiments address
> patterning the contact holes for the connection terminals in the same
> photolithographic step. The specification clearly explains that a
> contact [hole] for the source wiring connection terminal is being
> formed separate from a contact hole that is being formed in the same
> step for the gate wiring connection terminal, and specifically defines
> the meaning of the identical claim language used in both
> embodiments, namely "a contact hole for source wiring and gate
> wiring connection terminals," to mean "a contact hole for a source
> wiring connection terminal and a contact hole for a gate wiring
> connection terminal."

A9107-08 ¶ 10 (internal citations omitted).

Another expert, Dr. Smith, likewise confirmed that "a POSITA would

definitely rely on the D embodiment of the specification to confirm the scope and

understanding of the claim language at issue:"

> Based on the specification, a POSITA at the time of the invention
> would understand the scope of the phrase "*a contact hole for the
> source wiring and gate wiring connection terminals*." As I previously
> explained, and as set forth below, the specification also shows to a
> POSITA at the time of the invention that this term means a contact
> hole for a source wiring connection terminal and a separate contact
> hole for a gate wiring connection terminal.

A9120 ¶ 5.

The record thus shows that one of skill would understand that the same

claim language has the same meaning for purposes of the "D" and "G"

embodiments and the G8 step. A5947 ¶¶ 19-20; A5961-64 ¶¶ 19, 22. Indeed, identical claim language should be given a consistent meaning in claim construction. *See, e.g., Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1030-31 (Fed. Cir. 2002). The Magistrate Judge, however, erroneously disregarded the unequivocal intrinsic evidence regarding the "D" embodiment, even though it relates to *identical* claim language, and instead focused on the "G" embodiment and description. A29-30.

The Defendants persuaded the Magistrate Judge to disregard the "D" embodiment based on irrelevant differences.[22] *See* A2020, A2023. These differences concerning the contact holes reaching *the gate wiring* and *drain electrode* are irrelevant to whether the contact holes for the *source wiring* and *gate wiring connection terminals* are the same or separate holes. *See* A9108-09 ¶¶ 11-12 (explaining that the distinctions are irrelevant); A5961-64 ¶¶ 19-22 (same); A9123-25 ¶¶ 8-11 (same). Eidos' experts specifically explained that the differences between the "D" and "G" embodiments are immaterial to the meaning

---

[22] Defendants argued that the "D" embodiment differs from the "G" embodiment because, in the former, the contact hole reaching the gate wiring is formed in a separate step from the contact holes for the source and gate connection terminals. In claim 1, the contact holes (*e.g.*, reaching the drain electrode, reaching the gate wiring, for the source wiring connection terminal, and for the gate wiring connection terminal) are formed in the same step. A121 at 58:35-39.

of the last term in the G8 step.  A5947 ¶¶ 19-20; A5961-64 ¶¶ 19, 22.  For

instance, as Dr. Schlam explained:

> A person of ordinary skill in the art would understand that the D8 step "does not disclose the formation of a contact hole reaching the drain electrode as disclosed in the G8 step."  However, this difference is not important and would have no bearing on the meaning of the claim term at issue as it would be understood by a person of ordinary skill in the art at the time of the invention.  The claim term at issue deals with the formation of contact holes for the terminals, not the formation of contact holes reaching the drain electrodes.  The contact holes for the drain electrodes would be understood by a person of ordinary skill in the art to be separate from the contact holes for the connection terminals, whether or not the drain electrode contact holes are disclosed in the same photolithographic step or in the patent at all.  Regardless, the formation of the contact holes for the drain electrodes would not change the understanding of a person of ordinary skill in the art as to the meaning of the identical claim term "a contact hole for source wiring and gate wiring connection terminals" appearing in both the D and G embodiments.

> Similarly, the understanding of a person of ordinary skill in the art that the claim term at issue means a contact hole for a source wiring connection terminal and a contact hole for a gate wiring connection terminal would not be altered by the fact that "a separate step, D4, is used to form the contact hole reaching the gate wiring ('958 patent at 31:4-9)."  As with the separate hole for the drain electrode, a person of ordinary skill would understand that this difference is not relevant and would have no bearing upon the understanding of the limitation regarding formation of contact holes for the two sets of terminals themselves.  Regardless of whether a separate contact hole reaching the gate wiring is formed in the same or different photolithographic step does not affect the meaning of the claim limitation dealing with formation of the contact holes for the connection terminals.  In both the D and G embodiments, the contact holes for the terminals are formed in the same photolithographic step.

A9108-09 ¶¶ 11-12 (internal citations omitted).

Similarly, Dr. Smith explained that:

> the formation of "a contact hole reaching the gate wiring" and "a
> contact hole reaching the drain electrode" would not be relevant to a
> POSITA's understanding of the scope of the term "a contact hole for
> source wiring and gate wiring connection terminals" that appears in
> both the D and G embodiments.  The contact holes reaching the gate
> wiring and the drain electrode have nothing to do with connecting to
> external drive circuitry.  A POSITA would understand from their
> knowledge of the art and the G embodiment of the '958 patent that "a
> contact hole reaching the drain electrode" is a structure that allows the
> thin-film transistor to connect to one of the millions of pixels of an
> LCD.  In contrast, the contact holes for source wiring and gate wiring
> connection terminals are structures formed completely outside of the
> thin-film-transistor and pixel array and are used to connect to external
> source and gate driving circuitry.

A9120 ¶ 6.

Further, as explained in Dr. Smith's declaration, one of skill would

understand that a contact hole for each of the source wiring and gate wiring

connection terminals would be formed for both the "D" and "G" embodiments.

A9120-25 ¶¶ 5-11.  Both embodiments involve similar deposition etch processes.

As Dr. Smith explained, the process of forming a contact hole to connect to

external drive circuitry would have been understood to be the same in the G8 step

as in the D8 step.  A9124-25 ¶ 11.  Thus, there was no basis for the court to

distinguish or disregard the "D" embodiment.  The exact same words mean the

same thing in both claims, and there is no reason to read the same words to have a

different meaning.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir.

2005) (*en banc*).

## B. The Reexamination Proceedings Confirm that A Contact Hole is Formed for Each of the Connection Terminals

The record in the reexamination proceedings also leaves no doubt that the G8 step refers to a contact hole for each of the connection terminals. As Eidos and its experts pointed out, the reexamination record confirms this multiple times. *See, e.g.*, A5934-35; A9091-92; A5948-49 ¶¶ 21-26; A5961¶ 18; A9110-13 ¶¶ 14-18; A9122-23 ¶ 7. First, the panel of examiners read the claim from the perspective of one skilled in the art as referring to separate contact holes for each of the connection terminals: "the claim language implicitly requires separate contact holes for the source wiring and gate wiring connection terminals." A6060-62. In a subsequent Non-Final Office Action, the panel again read the G8 step to refer to separate contact holes for each connection terminal. A6080.

The reexamination requester also understood that the prior art refers to separate contact holes. In 2011, the requester annotated a prior art reference (Matsumoto) as showing a contact hole for each of the source wiring and gate wiring connection terminals. A6036-37. This is additional evidence of known industry practice and what a person of skill would understand.

Further, Eidos confirmed that this claim step involves forming separate contact holes, including "(3) one contact hole for the source wiring connection terminal; and (4) one contact hole for the gate wiring connection terminal." A6123. In addition, Eidos' expert in the reexamination proceedings, Dr. Rubloff,

confirmed that one of skill would understand the claim language to mean forming separate contact holes for each of the connection terminals. A6135-36 ¶¶ 15, 18.

Both the patent and the reexamination record confirm how one of ordinary skill would understand the claim. During the prosecution of original claim 8, now claim 1, moreover, the examiner never expressed any issue as to the definiteness of the language corresponding to contact holes for the connection terminals. *See* A6005-06. In stark contrast, as the district court concluded, there is no intrinsic support at all for Defendants' non-infringement construction of "common" contact holes. A31; A5956-61 ¶¶ 4, 14, 16-17 (no specification support, and no prior art support, for using common contact hole to expose both source wiring and gate wiring connection terminals).

### C.   The '958 Patent Did Not Need To Explain Further What A Person of Skill in the Art Would Already Know

The Magistrate Judge ignored the principle that "an inventor need not explain every detail because a patent is read by those of skill in the art." *Wellman*, 642 F.3d at 1367; *see also Verve*, 311 F.3d at 1119. Similarly, a claim term "does not have to be specifically explained in the specification to be understood by one skilled in the art." *SFA Sys., LLC v. Infor Global Solutions (Michigan), Inc.*, No. 6:07 CV 067, 2009 WL 440559, at *8 (E.D. Tex. Feb. 23, 2009) (citing *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1217 (Fed. Cir. 2003)). The routine formation of a contact hole for each of the connection

terminals was not a novel aspect of the invention.  The patent did not need to

explain more specifically in the "G" embodiment that a contact hole is formed for

each of the connection terminals, or other well-known aspects of manufacturing.

D.     **Claim 1 Does Not Use "Terms of Degree" or Other Inherently Ambiguous or Subjective Terms**

Claim 1 does not present the ambiguous scope problem that may arise when

a claim uses a subjective "term of degree" or is written in means-plus-function

format without disclosing the structure necessary to understand the claim scope.

When a claim uses a term of degree, the law requires the patent's specification to

"provide[] some standard for measuring that degree."  *Seattle Box Co. v. Indus.*

*Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984).  Similarly, for a

means-plus-function claim, the law requires adequate disclosure in the

specification of the structure that corresponds to the function of the claims.  *See,*

*e.g., Personalized Media Commc'ns, LLC v. ITC*, 161 F.3d 696, 700 n.5 (Fed. Cir.

1998).

Even inherently subjective or means-plus-function claims are sufficiently

definite, however, if understood from the perspective of one skilled in the art.  *See,*

*e.g., Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1382 (Fed. Cir.

1999) (testimony of expert showed that mere title of publication, cited in

specification, provided necessary structure to one of ordinary skill); *Young*, 492

F.3d at 1346 (claim not indefinite for using "near," a term of degree, because

specification provided a measurement standard that would be understood by one of ordinary skill).  Here, Claim 1 does not use any subjective "term of degree" and is not written in means-plus-function format.  The G8 step is easily understood by, and not indefinite to, one skilled in the art.

## CONCLUSION

For these reasons, the ruling of summary judgment of indefiniteness and the Final Judgment entered below should be reversed and the case should be remanded to the district court.

May 8, 2014

/s/Gaspare J. Bono
Gaspare J. Bono
R. Tyler Goodwyn, IV
Cass W. Christenson
MCKENNA LONG & ALDRIDGE, LLP
1900 K Street, N.W.
Washington, D.C.  20006
Telephone:  (202) 496-7500
Facsimile:   (202) 496-7756
E-mail:  gbono@mckennalong.com
E-mail:  tgoodwyn@mckennalong.com
E-mail:  cchristenson@mckennalong.com

*Attorneys for Plaintiffs-Appellants*
*Eidos Display, LLC and Eidos III, LLC*

# ADDENDUM

The Sealed Report and Recommendation of United States Magistrate Judge

(D.I. 412), originally filed under seal, has been unsealed by court order (D.I. 435).

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

EIDOS DISPLAY, LLC,              §
and EIDOS III, LLC,              §
                                 §
v.                               §     No. 6:11-cv-00201-LED-JDL
                                 §
AU OPTRONICS CORPORATION;        §
AU OPTRONICS CORPORATION         §
AMERICA;                         §
CHI MEI INNOLUX CORPORATION;.    §
CHI MEI OPTOELECTRONICS USA,     §
INC.;                            §
CHUNGHWA PICTURE TUBES LTD.;     §
HANNSTAR DISPLAY                 §
 CORPORATION; AND                §
HANNSPREE NORTH AMERICA, INC.    §

FINAL JUDGMENT

Before the Court is Plaintiffs' Motion for Entry of Final Judgment (Doc. No. 424) ("Motion"). The matter is fully briefed (Doc. Nos. 425, 426, and 427). Upon consideration, the Motion is **GRANTED IN PART.**

Pursuant to this Court's Order Adopting the Report and Recommendation of United States Magistrate Judge granting Defendants' Motion for Summary Judgment of Indefiniteness and overruling Plaintiffs' Objections (Doc. No. 419), the Court hereby enters final judgment.

It is therefore **ORDERED, ADJUGED** and **DECREED** that judgment be and is hereby entered in favor of Defendants and against Plaintiffs finding that Claim 1 of U.S. Patent No. 5,879,958 is invalid on the ground of indefiniteness; and all other claims and counterclaims are **DISMISSED WITHOUT PREJUDICE**.

The defendants, as the prevailing parties, are awarded costs pursuant to FED. R. CIV. P. 54(d)(1).

A000022A

Still pending in this case is Defendants HannStar Display Corporation and Hannspree North America, Inc.'s (collectively, "Hannspree") Motion for Fed. R. Civ. P. 11 Sanctions against Plaintiffs (Doc. No. 366). That Motion and associated briefing (Doc. Nos. 394 and 411) are hereby **SEVERED** into a separate cause of action, numbered 6:14cv221. All attorneys for plaintiff and Defendant Hannspree in the above-captioned case shall be listed as attorneys of record and noticed on the new cause of action. The above noted filings (Doc. Nos. 366, 394 and 411) **SHALL** be entered into the new cause of action in their entireties, including all attachments. As this issue is severed pursuant to a Court Order, the Court **WAIVES** any required filing fee for the new cause of action. In light of the severance, Defendant Hannspree's Opposed Motion to Lift Stay (Doc. No. 428) is hereby **DENIED AS MOOT.**

All other motions by either party not previously ruled on are hereby **DENIED AS MOOT**.

The Clerk of the Court is directed to close this case.

 **So ORDERED and SIGNED this 23rd day of April, 2014.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| EIDOS DISPLAY, LLC, | § | |
| and EIDOS III, LLC | § | |
| | § | |
| v. | § | No. 6:11-cv-00201-LED-JDL |
| | § | |
| AU OPTRONICS CORPORATION; | § | |
| AU OPTRONICS CORPORATION | § | |
| AMERICA; | § | |
| CHUNGHWA PICTURE TUBES, LTD. | § | |

### ORDER ADOPTING REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

The above entitled and numbered civil action was referred to United States Magistrate Judge John D. Love pursuant to 28 U.S.C. § 636.  The Report and Recommendation of the Magistrate Judge ("Report"), which contains his proposed findings of fact and recommendation for the disposition of such action, has been presented for consideration (Doc. No. 412).  The Magistrate Judge recommends granting Defendants' Motion for Summary Judgment of Indefiniteness (Doc. No. 314).  Plaintiff filed objections (Doc. No. 415) to which Defendants replied (Doc. No. 416).  Plaintiff filed a response (Doc. No. 417) accompanied by a Motion for Leave to Allow a Reply Brief (Doc. No. 418) which is hereby **GRANTED.**

The Court is of the opinion that the conclusion of the Magistrate Judge is correct.  Plaintiff's objections are overruled.  Therefore, the Court hereby adopts the Order of the United States Magistrate Judge as the findings and conclusions of this Court and Defendants' Motion for Summary Judgment of Indefiniteness is **GRANTED.**

**So ORDERED and SIGNED this 22nd day of January, 2014.**



**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**
A000022C

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| EIDOS DISPLAY, LLC, | § | **SEALED** |
| and EIDOS III, LLC | § | |
| | § | |
| v. | § | No. 6:11-cv-00201-LED-JDL |
| | § | |
| AU OPTRONICS CORPORATION, et al. | § | |

SEALED REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendants AU Optronics Corporation ("AUO"), Chi Mei Innolux Corporation ("Innolux"), Chunghwa Picture Tubes, Ltd., HannStar Display Corporation, and Hannspree North America, Inc.'s (collectively, "Defendants") Motion for Summary Judgment of Indefiniteness (Doc. No. 314) ("Motion"). Plaintiff Eidos Display, LLC, and Eidos III, LLC, ("Eidos") filed a Response (Doc. No. 316) ("Response"). Defendants filed a Reply (Doc. No. 320) and Eidos filed a Surreply (Doc. No. 329). Having considered the parties' submissions and for the reasons stated below, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED.**

BACKGROUND

Eidos alleges Defendants infringe claim 1 of U.S. Patent No. 5,879, 958 ("the '958 Patent"). The '958 Patent is titled "Method of Producing an Electro-Optical Device" and relates to the process of forming circuitry used in controlling liquid crystal displays ("LCD"). Specifically, the '958 patent relates to the process for forming an array of thin film transistors ("TFT") and pixel electrodes that are used to control the light emission of an LCD. The '958 Patent contains 17 embodiments (identified as A-S) providing various

1

manufacturing processes that reduce the number of photolithographic steps. *See* '958 Patent

4:50–14:18 (describing processes with four or five lithographic steps as opposed to seven).

Claim 1 is the only issued claim in the '958 Patent and recites as follows:

1. A method for producing an electro-optical device in which an electro-optical material is put between a pair of substrates opposed to each other, at least a portion of opposing surfaces of the substrates is insulative, a plurality of source wirings and a plurality of gate wirings are formed crossing each other on the surface of one of said pair of substrates and a transparent pixel electrode and a thin film transistor are formed at each of the crossing points between the source wirings and the gate wirings, wherein the method comprises:

   a step G1 of forming a first metal film on the surface of said one substrate, a first photolithographic step G2 of patterning the first metal film to form a gate electrode and a gate wiring,

   a step G3 of forming a first insulator film, a semiconductor film and an ohmic contact film on the surface of said one substrate after the first photolithographic step,

   a second photolithographic step G4 of patterning the semiconductor active film and the ohmic contact film to form a semiconductor portion above the gate electrode in a state isolated from other portions,

   a step G5 of forming a second metal film on the surface of said one substrate after the second photolithographic step,

   a third photolithographic step G6 of patterning the second metal film and ohmic contact film to form a source electrode, a drain electrode and a channel portion,

   a step G7 of forming a passivation film on the surface of said one substrate after the third photolithographic step, and

2

> a fourth photolithographic step G8 of patterning the passivation film to form a contact hole reaching the gate wiring, a contact hole reaching the drain electrode and a contact hole for source wiring and gate wiring connection terminals,
>
> a step G9 of forming a transparent conductive film on the surface of the substrate after the fourth photolithographic step, and
>
> a fifth photolithographic step G10 of patterning the transparent conductive film to form a transparent pixel electrode.

'958 patent 58:5-47.

During the course of this litigation, the parties have proposed the following three constructions for the fourth photolithographic step G8 ("G8 step") with the constructions of the key limitation in bold:[1]

| Party | Proposed Construction of G8 Step |
|-------|----------------------------------|
| Defendants | "Plain meaning, which is removing portions of the passivation film to form a first opening exposing a portion of the gate wiring, a second opening exposing a portion of the drain electrode, **and a third opening for source wiring and gate wiring connection terminals.**" |
| Eidos | "removing portions of the passivation film to form an opening exposing a portion of the gate wiring, an opening exposing a portion of the drain electrode, **an opening for a source wiring connection terminal and an opening for a gate wiring connection terminal.**" |
| Innolux | "patterning the passivation film to form a contact hole reaching the gate wiring, to form a contact hole reaching the drain electrode, **to form a contact hole for source wiring and to form gate wiring connection terminals.**" |

The Court finds that this limitation is ambiguous and the intrinsic record fails to resolve this ambiguity for the reasons stated below.

---

[1] The Court has made multiple attempts at construction, each time reviewing relevant portions of the specification, file history, and the reexamination record (Doc. Nos. 149, 153, 159, 192, 194 (claim construction briefing); 184, 192, 194, 208, 293, 301 (claim construction orders and objections); 274-1, 284-1, 287-1 (letter briefs) and 297, 298, 299, & 300 (briefing on Innolux's proposed construction)).

3

During claim construction, Eidos argued that the claim requires one hole for source wiring connection terminals and a separate connection hole for gate wiring connections terminals. (Doc. No. 184 at 7) ("*Markman* Order"). Defendants argued that the plain language of the claim required the same contact hole for source wiring and gate wiring connection terminals. *Id.* at 8. The Court found that "while the claim language raises ambiguity regarding the contact holes, neither party's construction is supported by the specification." *Id.* at 10. Thus, the Court found that "the issue of whether there are three or four holes, and whether those corresponding holes are separate and distinct, is not ripe for claim construction, as the dispute presented centers around theories of invalidity pursuant to 35 U.S.C. § 112." *Id.* at 11.

Defendant Innolux subsequently proposed a third construction for the G8 step, encompassing three-holes and adding the formation of the structure "gate wiring connection terminals." (Doc. No. 271-1 at 3). The Court requested briefing on this construction from the parties. Upon consideration, the Court ultimately rejected the third proposed construction (Doc. No. 301).

Due to the multiple failed efforts at construction, the Court requested briefing on whether the language at issue is indefinite. Accordingly, Defendants now request summary judgment of invalidity based on indefiniteness, "as the key limitation remains insolubly ambiguous after multiple attempts at construction, each of which included a complete review of the relevant portions of the specification, file history, and the reexamination record." MOTION at 1. Eidos opposes, arguing that the term is not indefinite, and is understood by persons of ordinary skill in the art. RESPONSE at 1.

# LEGAL STANDARD

## I.      Summary Judgment Standard

"Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Nike Inc. v. Wolverine World Wide, Inc.,* 43 F.3d 644, 646 (Fed. Cir. 1994); FED. R. CIV. P. 56(c).

## II.     Indefiniteness

A party seeking to invalidate a patent must overcome a presumption that the patent is valid.  *See* 35 U.S.C. § 282; *Microsoft Corp. v. i4i Ltd. Partnership*, -- U.S. ----, 131 S. Ct. 2238, 2243 (2011); *United States Gypsum Co. v. National Gypsum Co.,* 74 F.3d 1209, 1212 (Fed. Cir. 1996).   This presumption places the burden on the challenging party to prove the patent's invalidity by clear and convincing evidence.  *Microsoft,* 131 S.Ct. at 2243; *United States Gypsum Co.,* 74 F.3d at 1212. Close questions of indefiniteness "are properly resolved in favor of the patentee."   *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348 (Fed. Cir. 2005); *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1380 (Fed. Cir. 2001).

Claims must particularly point out and distinctly claim the invention.  "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  35 U.S.C. § 112 ¶ 2.  The primary purpose of the requirement of definiteness is to provide notice to those skilled in the art of what will constitute infringement.  *See United Carbon Co. v. Binney Co.,* 317 U.S. 228, 236 (1942). The definiteness standard is one of reasonableness under the circumstances, requiring that, in light of the teachings of the prior art and the invention at issue, the claims apprise those skilled in the art of the scope of the invention with a reasonable degree of precision and particularity.  *See*

*Shatterproof Glass Corp. v. LibbeyOwens Corp.,* 758 F.2d 613, 624 (Fed. Cir. 1985). To rule "on a claim of patent indefiniteness, a court must determine whether one skilled in the art would understand what is claimed when the claim is read in light of the specification." *Bancorp. Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1372 (Fed. Cir. 2004). "A determination of indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims, [and] therefore, like claim construction, is a question of law." *Amtel Corp. v. Info. Storage Devices, Inc.,* 198 F.3d 1374, 1378 (Fed. Cir. 1999).

## DISCUSSION

As stated above, Defendants contend that the sole claim of the '958 patent is indefinite under 35 U.S.C. § 112 ¶ 2. MOTION AT 1. Defendants argue that the claim language "a contact hole for source wiring and gate wiring connection terminals" is insolubly ambiguous because (1) the specification does not resolve the ambiguity and (2) the disputed claim language is not amenable to a plausible and supported construction. *See id.* at 3, 7. Eidos argues that the term is not indefinite, that it is understood by persons of ordinary skill in the art, and invites the Court to conduct further construction. RESPONSE at 1-2.

Based on the claim language of step G8 and consistent with the parties' proposed constructions, one of skill in the art could (1) create separate contact holes for gate wiring connection terminals and source wiring connection terminals, (2) create a common contact hole for source wiring and gate wiring connection terminals, or (3) create a contact hole for source wiring in the same step as forming the gate wiring connection terminals. As discussed below, the intrinsic record fails to indicate which construction is correct leaving the disputed claim language insolubly ambiguous.

A000028

## I.     Eidos' Proposed Construction

The G8 step of Claim 1 reads "…a contact hole for source wiring and gate wiring connection terminals" '958 Patent 58:40-41.  During claim construction, Eidos argued that this portion of the G8 step calls for "separate openings for the source wiring connection terminal and the gate wiring connection terminal." *Markman* Order at 7.  However, neither the plain language of the G8 step in Claim 1 nor the specification discloses the creation of separate and distinct contact holes for source wiring and gate wiring connection terminals.  '958 Patent 36:27-33 (describing G8 as "a contact hole 210 leading to the drain electrode 207, a contact hole 211 leading to the gate wiring 193 and a contact hole 212 leading to the source wiring 206").  Such an interpretation would require the "a" in "…a contact hole for source wiring and gate wiring connection terminals" to mean "separate," which it does not.  Rather than relying on the portion of the specification describing the G8 step, Eidos relied on a portion of the specification describing the fourth photolithographic step D8, which reads "…a contact hole 132 for a source wiring connection terminal and a contact hole for a gate wiring connection terminal…" '958 Patent 31:50-52.  The D8 step is the only embodiment within the '958 patent to disclose separate contact holes for the gate wiring and source wiring connection terminals.  *Markman* Order at 8.  The D8 step, however, does not disclose the formation of a contact hole reaching the drain electrode as disclosed in the G8 step.  Specifically, the G8 step is described as "a contact hole 210 leading to the drain electrode 207, a contact hole 211 leading to the gate wiring 193 and a contact hole 212 leading to the source wiring 206."  '958 Patent 36:27-33.  The D8 step demonstrates that if the inventors had wanted to describe separate contact holes formed in the G8 step, they could have done so.  As written, the G8 step fails to delineate the formation of separate contact holes for the source wiring and gate wiring connection terminals.  Moreover, the D8 step

A000029

does not appear to correspond to step G8 because a separate step, D4, is used to form the contact hole reaching the gate wiring. '958 Patent 31:4-9. Thus, the specification provides no teaching of a single photolithographic step of patterning a passivation film to form the four openings sought by Eidos: an opening exposing a portion of the gate wiring, an opening exposing a portion of the drain electrode, an opening for a source wiring connection terminal, and an opening for a gate wiring connection terminal.

In their opposition, Eidos argues that the claim language is not indefinite because Defendants argued at claim construction that the term should be "construed following its 'plain and ordinary meaning.'" RESPONSE at 1-3. Such an argument fails to sufficiently acknowledge that the Court rejected Defendant's proposal, finding that it lacked support in the specification. In addition, Eidos fails to show where or how the specification supports a "plain and ordinary meaning" of the disputed term, distinguishing the present litigation from the cases cited by Eidos. *IP Innovation, LLC v. Red Hat, Inc.* No. 2:07-cv-447, 2009 WL 2460982, at *10 (E.D. Tex. Aug. 10, 2009); *Emcore v. Optium Corp.*, No. 6-1202, 2008 WL 3271553, at *7-8 (W.D. Pa. Aug. 5, 2008) (both holding that the specification provided support to define and construe the disputed claim language). Thus, the Court finds that neither the claim language nor the specification supports Eidos' construction of separate openings for the source wiring connection terminal and the gate wiring connection terminal.

## II. Defendants' Proposed Construction

During claim construction, Defendants argued a construction with a common hole for both source wiring and gate wiring connection terminals. *Markman* Order at 8. This construction would have required the Court to interpret "…a contact hole for the source wiring and the gate wiring connection terminals" to mean the same hole for both the source wiring and

A000030

the gate wiring connections. As explained in the *Markman* Order, whether or not "a" as used in Claim 1 means "the same" or "separate" is unclear and the specification fails to provide support for either interpretation. *Id.* at 8-9. Further, the Court was unable to locate support in the specification "for a common contact hole for both the source wiring and gate wiring connection terminals formed in a single step along with a contact hole reaching the gate wiring and a contact hole reaching the drain electrode" as required in the fourth photolithographic step of Claim 1. *Id.* at 11.

## III.    Innolux's Proposed Construction

In requesting leave to file a motion for summary judgment of noninfringment, Defendant Innolux proposed the following construction: "patterning the passivation film to form a contact hole reaching the gate wiring, to form a contact hole reaching the drain electrode, to form a contact hole for source wiring and to form gate wiring connection terminals" (Doc. No. 273-1). The Court invited the parties to provide their responses (Doc. No. 293). Innolux's proposed construction required the gate wiring terminals to be formed from the passivation film, which is an insulating material. '958 Patent 26:4-8; 31:36-38; 33:33-35; 55:40-43. The specification, however, describes the connection terminals as being made of a conductive material. '958 Patent 36:35-45; 38:9-19. Therefore, the connection terminals cannot be formed from an insulating material as required by Innolux's proposed construction. Thus, the Court declined to adopt this proposed construction (Doc. No. 301).

## IV.    Reexamination

The patent examiner confirmed the ambiguity in the claim language during reexamination in noting that "[t]he claim feature that was found important to the patentability of claim 1 … is unclear in at least two regards." NON-FINAL OFFICE ACTION at 3 (Doc. No. 314,

9

Ex. 5). He further states that "[t]he problem arises because there is no 'a contact hole for source wiring and gate wiring connection terminals' as recited in the claim…the language literally states that there is a single contact hole for both the source wiring and gate wiring terminals…[but] the claim language implicitly requires separate contact holes for the source wiring and gate wiring connection terminals." *Id.* at 4. While Eidos argues that the examiner was able to "understand the term," the language above clearly shows that the claim language is seeded with ambiguity surrounding the use of the indefinite article "a" followed by both the source wiring and gate wiring terminals. Thus, the reexamination does not aid in the resolution of the parties' dispute.

## V.    Expert Reports

Eidos argues in their opposition that the language at issue is not indefinite because various experts have opined as to the proper claim construction. Defendants' expert reports, however, demonstrate the ambiguity. For example, Defendants' expert Roger Stewart states that the "literal language [of the claim] might be in error" and that he "was unable to identify another claim interpretation that is consistent with embodiments of the '958 Patent without requiring substantial alterations of the literal claim language." (Doc. No. 314, Ex. 1 at ¶37-38) (emphasis added). He further states that "[t]his specification disclosure cannot be reconciled with the language of the G8 step of Claim 1 without significantly altering the claim language." *Id.* at ¶45.

Defendant AUO's expert, Dr. Aris Silzars, supports Defendants' proposed construction, stating that "the specification of the '958 patent fails to describe anywhere the formation of four separate contact holes in a single photolithographic step." (Doc. No. 314, Ex. 2 at ¶208). He also agrees that while a common contact hole "could be a viable interpretation by a person of ordinary skill in the art … I do not agree it comports with the plain meaning of the claim language." *Id.* Qualifying a construction as "viable" is hardly definite. Defendant Innolux's

A000032

expert, Jerzy Kanicki, notes that neither construction was appropriate and offered the alternative construction later proposed by Innolux discussed supra (Doc. No. 314, Ex. 3 at ¶¶21, 23-24).

Eidos' expert reports support their previously discussed construction that the fourth photolithographic G8 step calls for separate and distinct contact holes for source wiring and gate wiring connection terminals (Doc. No. 316-2, Ex. A, Decl. of Elliott Schlam; Doc. No. 316-3, Ex. B, Decl. of Bruce Smith). The Court acknowledges that Eidos' construction is a reasonable option and that a person of ordinary skill in the art may be able to fashion an application of the grammatically ambiguous claim language. However, the standard is not whether a person of ordinary skill in the art <u>can</u> fashion an application of the term, but whether in light of the intrinsic record such a person can ascertain the <u>scope</u> of the invention with a reasonable degree of precision and particularity. *See Shatterproof Glass,* 758 F.2d at 624. For the reasons discussed above, the Court finds that the intrinsic record does not resolve the ambiguity of the language in the G8 step, and the interpretation sought by Eidos' expert does not conform to the specification. Overall, the expert reports merely highlight the ambiguity in the term at issue.

## VI. Eidos' New Proposal

In their opposition, Eidos has invited the Court to conduct further claim construction, combining the prior proposed constructions and piecing them together into a construction that reads "an opening, common or separate, for source wiring and gate wiring connection terminals." RESPONSE at 9. Rather than resolving the ambiguity, this interpretation compounds the ambiguity by interpreting the claim to mean either Defendants' original construction (same contact hole) <u>or</u> Eidos' original construction (separate contact holes). Further, it is unsupported by the specification for the same reason the original constructions were unsupported. Throughout this litigation, Eidos has been given ample opportunity to resolve the ambiguities

A000033

and provide a construction compatible with the claim language and specification, but they have been unable to do so. The Court finds that at this stage in the litigation, the term at issue cannot be construed to a point where infringement and invalidity analysis can take place.

## CONCLUSION

Despite three proposed constructions, the Court is unable to arrive at a construction that would allow a person of ordinary skill in the art to determine "what is claimed when the claim is read in light of the specification." *Bancorp*, 359 F.3d at 1372. The intrinsic record fails to indicate which option is correct in the context of the language of Claim 1. Forcing a court to guess which interpretation to adopt is "beyond its authority." *Novo Industries, L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1358 (Fed. Cir. 2003). Further, a guess by a court in constructing a claim defeats the required notice function. *S3 Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1371-72 (Fed. Cir. 2001). Thus, the claim is insolubly ambiguous. A claim is invalid as indefinite if the claim is insolubly ambiguous. *Honeywell Int'l v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338-39 (Fed. Cir. 2003). A legal conclusion of indefiniteness under § 112, ¶2 is appropriate for resolution at summary judgment. *Datamize*, 417 F.3d at 1347. Thus, summary judgment is appropriate. Accordingly, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment of Invalidity for Indefiniteness be **GRANTED**.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen (14) days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to

A000034

factual findings and legal conclusions accepted and adopted by the district court.  *Douglass v.*

*United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).


**So ORDERED and SIGNED this 3rd day of December, 2013.**


JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

A000035

# CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of May, 2014, I caused the foregoing

Brief of Appellants Eidos Display, LLC and Eidos III, LLC to be served by the

Electronic Filing System and/or email, on the following:

Donald R. McPhail, Esq.
Barry P. Golob, Esq.
COZEN O'CONNOR
The Army & Navy Building
Suite 1100
1627 I Street, N.W.
Washington, DC 20006
dmcphail@cozen.com
bgolob@cozen.com

Jacob Adam Schroeder, Esq.
Ming-Tao Yang, Esq.
FINNEGAN, HENDERSON, FARABOW, GARRETT
& DUNNER, LLP
3300 Hillview Avenue
Palo Alto, CA 94304
ming.yang@finnegan.com
jacob.schroeder@finnegan.com

M. Craig Tyler, Esq.
Brian A. Dietzel, Esq.
Wilson Sonsini Goodrich & Rosati, Professional
Corporation
900 South Capital of Texas Hwy.
Las Cimas IV, Fifth Floor
Austin, Texas 78746
ctyler@wsgr.com
bdietzel@wsgr.com

Christopher R. Benson, Esq.
2705 Pearce Road
Austin, Texas 78730
cbensonlaw@me.com

Daniel S. Leventhal, Esq.
FULBRIGHT & JAWORSKI LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
daniel.leventhal@nortonrosefulbright.com

/s/ Gaspare J. Bono
Gaspare J. Bono
R. Tyler Goodwyn, IV
Cass W. Christenson
MCKENNA LONG & ALDRIDGE, LLP
1900 K Street, N.W.
Washington, D.C.  20006
Telephone:  (202) 496-7500
Facsimile:  (202) 496-7756
E-mail:  gbono@mckennalong.com
E-mail:  tgoodwyn@mckennalong.com
E-mail:  cchristenson@mckennalong.com

*Attorneys for Plaintiffs-Appellants*
*Eidos Display, LLC and Eidos III, LLC*

# CERTIFICATE OF COMPLIANCE WITH
# TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND
# TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  The brief contains 13,676 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).  As permitted by Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned has relied upon the word count feature of the word processing system Microsoft Word 2010 in preparing this certificate.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman.

May 8, 2014                          /s/Gaspare J. Bono
                                     Gaspare J. Bono
                                     R. Tyler Goodwyn, IV
                                     Cass W. Christenson
                                     MCKENNA LONG & ALDRIDGE, LLP
                                     1900 K Street, N.W.
                                     Washington, D.C.  20006
                                     Telephone:  (202) 496-7500
                                     Facsimile:   (202) 496-7756
                                     E-mail:  gbono@mckennalong.com
                                     E-mail:  tgoodwyn@mckennalong.com
                                     E-mail:  cchristenson@mckennalong.com

                                     *Attorneys for Plaintiffs-Appellants*
                                     *Eidos Display, LLC and Eidos III, LLC*