**2014 - 1254**

IN THE

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

———————

EIDOS DISPLAY, LLC, EIDOS III, LLC,

*Plaintiffs-Appellants*,

v.

AU OPTRONICS CORPORATION, AU OPTRONICS CORPORATION AMERICA, CHI MEI INNOLUX CORPORATION, CHI MEI OPTOELECTRONICS USA INC., CHUNGHWA PICTURE TUBES, LTD., HANNSTAR DISPLAY CORPORATION, HANNSPREE NORTH AMERICA, INC.,

*Defendants-Appellees*.

**Appeal from the United States District Court for the Eastern District of Texas in Case No. 6:11-cv-201-LED-JDL, Judge Leonard Davis**

———————

## BRIEF OF DEFENDANTS-APPELLEES

———————

MARVIN CRAIG TYLER
BRIAN A. DIETZEL
GEOFFREY WILLIAM HEAVEN
WILSON, SONSINI, GOODRICH & ROSATI, P.C.
 900 SOUTH CAPITAL OF TEXAS HIGHWAY
LAS CIMAS IV, FIFTH FLOOR
AUSTIN, TX 78746
(512) 338-5400

*Attorneys for Defendants-Appellees*
*AU Optronics Corporation and AU*
*Optronics Corporation America*

CHRISTOPHER R. BENSON
2705 PEARCE ROAD
AUSTIN, TX 78730
(832) 567-0700

*Attorney for Defendants-Appellees*
*Chunghwa Picture Tubes, Ltd.*

July 14, 2014

MING-TAO YANG
JACOB A. SCHROEDER
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.
3300 HILLVIEW AVENUE
PALO ALTO, CA 94304
(650) 840-6600

*Attorneys for Defendants-Appellees*
*Chi Mei Innolux Corporation, Chi*
*Mei Optoelectronics USA, Inc.,*
*HannStar Display Corporation, and*
*Hannspree North America, Inc.*

DANIEL LEVENTHAL
ERIC HALL
FULBRIGHT & JAWORSKI LLP
1301 MCKINNEY, SUITE 5100
HOUSTON, TX 77010
(713) 651-5151

*Attorneys for Defendants-Appellees*
*Chunghwa Picture Tubes, Ltd.*

# CERTIFICATE OF INTEREST

Counsel for Defendants-Appellees AU Optronics Corporation and AU Optronics Corporation America certify the following:

The full name of every party or amicus represented by us is:

> AU Optronics Corporation
> AU Optronics Corporation America

The name of the real party in interest represented by us is:

> N/A

All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by us are:

> Other than AU Optronics Corporation, AU Optronics Corporation America's indirect parent, there is no publicly held corporation that owns more than 10% or more of its stock.

The names of all law firms and the partners or associates that appeared for the party or amicus now represented by us in the trial court or agency or are expected to appear in this Court are:

> M. Craig Tyler, Brian A. Dietzel, and Geoffrey Heaven of Wilson Sonsini Goodrich & Rosati, P.C., who will be appearing on behalf of AU Optronics Corporation and AU Optronics Corporation America. Further Jim Yoon, Albert Shih, and Nicholas Short of Wilson Sonsini Goodrich & Rosati, P.C. and Lawrence J. Gotts of Latham and Watkins have appeared on behalf of the AUO Appellees in the District Court.

# CERTIFICATE OF INTEREST

Counsel for Defendants-Appellees Chi Mei Innolux Corporation and Chi Mei Optoelectronics USA Inc. certify the following:

The full name of every party or amicus represented by us is:

> Chi Mei Innolux Corporation (now named Innolux Corporation)
> Chi Mei Optoelectronics USA, Inc.

The names of the real parties in interest represented by us are:

> Innolux Corporation
> Chi Mei Optoelectronics USA, Inc.

All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by us are:

> Chi Mei Optoelectronics Japan Co., Ltd.

The names of all law firms and the partners or associates that appeared for the party or amicus now represented by us in the trial court or agency or are expected to appear in this Court are:

> Donald R. McPhail
> Barry P. Golob
> Kerry McTigue
> COZEN O'CONNOR
>
> Andy Tindel
> MT2 LAW GROUP
>
> Ming-Tao Yang
> E. Robert Yoches
> Jacob A. Schroeder
> FINNEGAN, HENDERSON, FARABOW,
>   GARRETT & DUNNER, LLP
>
> Debra Elaine Gunter
> Herbert A. Yarbrough, III
> YARBROUGH WILCOX GUNTER, PLLC

## CERTIFICATE OF INTEREST

Counsel for Defendants-Appellees Chunghwa Picture Tubes, Ltd. certify the following:

The full name of every party or amicus represented by us is:

Chunghwa Picture Tubes, Ltd.

The name of the real party in interest represented by us is:

N/A

All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by us are:

N/A

The names of all law firms and the partners or associates that appeared for the party or amicus now represented by us in the trial court or agency or are expected to appear in this Court are:

Fulbright & Jaworski LLP (Eric Hall, Daniel Leventhal, Paul Dyson, Anuj Dharia)

Christopher Benson - Attorney at Law

# CERTIFICATE OF INTEREST

Counsel for Defendants-Appellees HannStar Display Corporation and Hannspree North America, Inc. certify the following:

The full name of every party or amicus represented by us is:

> HannStar Display Corporation;
> Hannspree North America, Inc.

The names of the real parties in interest represented by us are:

> HannStar Display Corporation;
> Hannspree North America, Inc.

All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by us are:

> N/A

The names of all law firms and the partners or associates that appeared for the party or amicus now represented by us in the trial court or agency or are expected to appear in this Court are:

> Ming-Tao Yang
> E. Robert Yoches
> Jacob A. Schroeder
> FINNEGAN, HENDERSON, FARABOW,
>   GARRETT & DUNNER, LLP
>
> Debra Elaine Gunter
> Herbert A. Yarbrough, III
> YARBROUGH WILCOX GUNTER, PLLC
>
> John R. Alison
> David J. Martens
> WINSTON & STRAWN LLP

# TABLE OF CONTENTS

TABLE OF CONTENTS.........................................................................................i

TABLE OF AUTHORITIES .............................................................................v

STATEMENT OF RELATED CASES ........................................................ viii

I.    COUNTERSTATEMENT OF THE ISSUES ..................................1

II.   PRELIMINARY STATEMENT ....................................................1

III.  COUNTERSTATEMENT OF THE CASE ....................................1

     A.    Parent Application of the '958 Patent ....................................1

     B.    The '958 Patent .....................................................................2

           1.    Claim 1's G8 step recites forming three distinct contact holes................................................................2

           2.    The G embodiment describes forming three distinct contact holes................................................................4

           3.    Other embodiments highlight the internal inconsistencies in the intrinsic record ........................7

           4.    The D and G embodiments disclose entirely different processes ...................................................8

           5.    Embodiment S discloses forming one contact hole for connecting the source wiring and the gate wiring ......................9

           6.    The G8 step was the sole feature that distinguishes Claim 1 from the prior art .......................................10

     C.    The Reexamination Examiner Found the G8 Step Unclear But Could Not Address Indefiniteness During Reexamination.................................................................10

     D.    The District Court Is Unable To Ascertain the Scope of the Disputed Limitation.............................................................12

     1.      The District Court first attempted, and then declined, to construe the G8 step ............................................................. 12

     2.      Innolux, and then Eidos, offered additional proposed constructions ............................................................. 15

     3.      Defendants' summary judgment briefing introduced additional evidence of indefiniteness .......................................... 17

     4.      The District Court held Claim 1 held invalid as indefinite ............................................................. 20

IV.    SUMMARY OF THE ARGUMENT ......................................... 21

V.    STANDARD OF REVIEW ...................................................... 24

VI.    ARGUMENT ............................................................. 25

    A.    Claim 1 Plainly Recites Forming Only Three Contact Holes in the G8 Step ............................................................. 25

    B.    The Differences Between Claim 1 and the Written Description Prevents Attaching a Meaning to Claim 1 ...................... 28

     1.      The reexamination examiner confirmed the literal meaning and indefiniteness problems ...................................... 28

     2.      The Magistrate initially adopted the literal meaning of the G8 Step, but later rejected it for having no support from the specification ............................................... 30

    C.    After Numerous Attempts at Construction, the District Court Properly Concluded that Claim 1 Is Indefinite ...................... 31

     1.      The District Court considered four proposed constructions, but rejected them all ......................................... 31

     2.      The District Court thoroughly examined the intrinsic record in finding Claim 1 indefinite, and rejected Eidos's constructions ............................................... 32

           a.     None of the eighteen preferred embodiments supports Eidos's construction ....................................... 33

b.     The G embodiment does not support Eidos's rewrite ................................................................33

c.     The D embodiment does not support Eidos's construction...............................................37

d.     The B, C, and F embodiments do not support Eidos's construction .......................................40

e.     The S embodiment belies Eidos's arguments................42

f.     The reexamination does not support Eidos's construction...............................................43

3.     The District Court fully considered the extrinsic evidence ...............................................................46

    a.     The District Court rejected testimony from Eidos's experts as inconsistent with the intrinsic evidence ...............................................................46

    b.     Defendants offered substantial expert testimony, which the District Court considered.............48

    c.     The District Court also properly observed that the diverse opinions of multiple experts further demonstrated indefiniteness ...........................................51

D.     Eidos's Other Arguments are Also Unavailing....................................53

    1.     Multiple "reasonable options" that lack intrinsic support do not cure indefiniteness ...........................53

    2.     The District Court properly noted that Eidos's second proposed construction confirmed indefiniteness .....................54

E.     The District Court's Conclusion Is Sound under the Supreme Court's *Nautilus* Decision....................................55

F.     Alternatively, Judgment Can Be Affirmed for Noninfringement if the Literal-Language Construction is Adopted ..............................................................59

VII.   CONCLUSION...............................................................................................61

# TABLE OF AUTHORITIES

## CASES

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
  659 F.3d 1121 (Fed. Cir. 2011) .......................................................... 25

*Acumed LLC v. Stryker Corp.*,
  483 F.3d 800 (Fed. Cir. 2007) ............................................................ 38

*Amgen Inc. v. F. Hoffman-La Roche Ltd.*,
  580 F.3d 1340 (Fed. Cir. 2009) .......................................................... 61

*BJ Servs. Co. v. Halliburton Energy Servs., Inc.*,
  338 F.3d 1368 (Fed. Cir. 2003) ..................................................... 52, 53

*CCS Fitness, Inc. v. Brunswick Corp.*,
  288 F.3d 1359 (Fed. Cir. 2002) .................................................... 26, 38

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
  358 F.3d 1371 (Fed. Cir. 2004) ..................................... 26, 29, 44, 47

*Deere & Co. v. Bush Hog, LLC*,
  703 F.3d 1349 (Fed. Cir. 2012) .......................................................... 60

*Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*,
  412 F.3d 1291 (Fed. Cir. 2005) .......................................................... 50

*Elcommerce.com, Inc. v. SAP AG*,
  745 F.3d 490 (Fed. Cir. 2014) ............................................................ 50

*Ernie Ball, Inc. v. Earvana, LLC*,
  502 Fed. Appx. 971 (Fed. Cir. 2013)................................................... 50

*Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*,
  No. 8:11-CV-2826, 2014 WL 869092 (M.D. Fla. Mar. 5, 2014)....................... 57

*Exxon Research & Eng'g Co. v. United States*,
  265 F.3d 1371 (Fed. Cir. 2001) .................................................... 24, 52

*Haemonetics Corp. v. Baxter Healthcare Corp.*,
  607 F.3d 776 (Fed. Cir. 2010) ............................................................ 51

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
 No. 2013-1450, 2014 WL 2898495 (Fed. Cir. June 27, 2014)...........................26

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
 175 F.3d 985 (Fed. Cir. 1999) ..................................................... 26, 38

*Lighting Ballast Control LLC v. Philips Electronics N. Am. Corp.*,
 744 F.3d 1272 (Fed. Cir. 2014) (en banc) ................................... 24, 52

*MarcTec LLC v. Johnson & Johnson*,
 664 F.3d 907 (Fed. Cir. 2012) .........................................................54

*Markman v. Westview Instruments, Inc.*,
 517 U.S. 370 (1996)..........................................................................58

*McCarty v. Lehigh Val. R. Co.*,
 160 U.S. 110 (1895)..........................................................................26

*Nautilus Inc. v. Biosig Instruments Inc.*,
 134 S. Ct. 2120 (2014)............................................................... *passim*

*Novo Indus., L.P. v. Micro Molds Corp.*,
 350 F.3d 1348 (Fed. Cir. 2003) .........................................................56

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................... 25, 38

*Planet Bingo, LLC v. GameTech Int'l, Inc.*,
 472 F.3d 1338 (Fed. Cir. 2006) .......................................................60

*Praxair, Inc. v. ATMI, Inc.*,
 543 F.3d 1306 (Fed. Cir. 2008) .......................................................52

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*,
 758 F.2d 613 (Fed. Cir. 1985) ................................................... 55, 56

*Source Vagabond Sys., Ltd. v. Hydrapak, Inc.*,
 Nos. 2013-1270, 2013-1387, 2014 WL 2521515 (Fed. Cir. Jun. 5, 2014) *passim*

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
 723 F.3d 1363 (Fed. Cir. 2013) .......................................................50

*Verve, LLC v. Crane Cams, Inc.*,
    311 F.3d 1116 (Fed. Cir. 2002) .......................................................51

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) .........................................................26

**STATUTES**

35 U.S.C. § 102 ..................................................................................11

35 U.S.C. § 103 ..................................................................................11

35 U.S.C. § 112 ............................................................... 15, 28, 30, 56

**RULES**

FED. R. CIV. P. 56 ...............................................................................25

**OTHER AUTHORITIES**

Giles S. Rich, *Extent of Protection and Interpretation of Claims—American
    Perspectives*, 21 INT'L REV. OF INDUS. PROP. & COPYRIGHT L. 497 (1990).......25

## STATEMENT OF RELATED CASES

No appeal in or from the same civil action was previously before this or any other appellate court. Counsel are not aware of any case that may be directly affected by this Court's decision.

## I. COUNTERSTATEMENT OF THE ISSUES

1. Whether the District Court correctly held Claim 1 invalid as indefinite?

2. Alternatively, whether the District Court erred in not adopting a plain language construction of the claim, under which Defendants do not infringe as a matter of law?

## II. PRELIMINARY STATEMENT

Claim 1 is indefinite because the plain language creates doubt as to its meaning, and none of the 18 embodiments, the remainder of the specification, or the prosecution history resolves, with reasonable certainty, which of four proposed constructions is correct. The numerous attempts by the District Court to construe the G8 step of Claim 1 have demonstrated that one of ordinary skill, after consulting the intrinsic evidence, would be unable to reasonably ascertain the bounds of the claim. Therefore, the G8 step fails to inform, with reasonable certainty, "those skilled in the art about the scope of the invention." *Nautilus Inc. v. Biosig Instruments Inc.*, 134 S. Ct. 2120, 2129 (2014).

## III. COUNTERSTATEMENT OF THE CASE

### A. Parent Application of the '958 Patent

The '958 Patent is a divisional of U.S. Patent No. 5,726,077, and claims priority to a Japanese application. JA36. The parent application discloses 18 preferred embodiments, identified numerically (e.g., First, Second, … Seventh)

and by letters (e.g., A, B, … G). *See, e.g.*, JA104 at 24:34-43 (describing the first step of the A embodiment). Each embodiment requires either four or five photolithographic steps to make a TFT array, and these embodiments form various contact holes through those steps. *See* JA94 at 4:26-36; JA99 at 14:31-37. The "Summary of the Invention" section includes twenty "aspects" identified by letters, which correspond to the original claims. JA94 at 4:39 - JA100 at 15:23 (summary of the invention); JA9419-49 (original claims).

The USPTO restricted the parent patent stating that the original claims covered seventeen different species. JA9516.

## B.    The '958 Patent

Applicants filed a divisional application to pursue original Claim 8 from the parent application. JA9516. Claim 1 of the '958 Patent recites a method of fabricating an electro-optical device. JA121. The method includes ten steps listed as "G1" through "G10"—five layer "forming" steps G1, G3, G5, G7, and G9 and five layer "patterning" steps G2, G4, G6, G8, and G10 to define specific structures, such as contact holes. *Id.*

### 1.    Claim 1's G8 step recites forming three distinct contact holes

The claim dispute focuses on whether the entire G8 step claims the formation of: three contact holes (as Defendants have always contended); four

contact holes (as Eidos contended in its first proposal); or whether the G8 step was

indefinite (as the Court eventually concluded).

The plain language of the G8 step recites:

> a fourth photolithographic step G8 of patterning the
> passivation film to form
> a contact hole reaching the gate wiring,
> a contact hole reaching the drain electrode and
> a contact hole for source wiring and gate wiring
> connection terminals;

JA121 at 58:36-40 (emphasis added via paragraphing). The G8 step recites "a

contact hole" three times, in a series having the first two separated by a comma and

the final one separated from the first two with an "and." *Id.* The G8 step recites

patterning three contact holes, each with specific properties. The parallel

grammatical structure in the claim lists each hole separately and defines its

properties separately:



The first two contact holes are modified by participial phrases starting with the present participle "reaching." As such, step G8 conveys that the first two contact holes "reach," respectively, the direct object: "gate wiring" and "drain electrode." The third "contact hole" is a singular noun modified by a prepositional phrase: "for source wiring and gate wiring connection terminals." The object of this prepositional phrase is a plural noun, "connection terminals." The claimed third contact hole is "for source wiring **and** gate wiring," as opposed to "for source wiring **or** gate wiring," connection terminals. Thus, the G8 step literally calls for three separate holes.

### 2.  The G embodiment describes forming three distinct contact holes

The G embodiment is described in columns 35 and 36 and depicted in Figures 54-63, labeled as steps G1 through G10, the same labels recited in Claim 1. JA55-57 (Figures); JA110 (description of G embodiment); JA121 (Claim 1). The G embodiment, like Claim 1, comprises ten steps "G1" through "G10," where the odd numbered steps deposit materials and the even numbered steps etch patterns, such as contact holes, into the materials. JA110. However, the G8 step of this embodiment differs from the claimed G8 step's third-hole limitation.

The G8 step in the written description patterns passivation film 209 (step G7) to form three contact holes:

a contact hole 210 leading to the drain electrode 207,

> a contact hole 211 leading to the gate wiring 193 and
> a contact hole 212 leading to the source wiring 206 to the
> treated substrate 190 as shown in FIG. 61.

JA110 at 36:27-34.  Figure 61 depicts the result after having performed steps G1-

G8.  JA57 (Fig. 61); JA110 at 36:27-33.



The following chart shows how the described G8 step deviates from the

claimed G8 step:



The third hole claimed in the G8 step, "for source wiring and gate wiring

connection terminals," does not correspond to the G embodiment, which describes

forming a third contact hole leading to "source wiring." *Compare* JA121 at 58:36-40 (Claim 1) *with* JA110 at 36:27-33 (G embodiment). The specification does not describe any connection terminals or holes leading to any connection terminal in the G embodiment. JA110 at 36:27-34. Nor does the specification disclose forming any other holes in the G8 step. *Id.*

Eidos's "annotated" Figure 61 on Page 50 of its Brief inaccurately reflects the specification. First, Eidos annotates hole 212 as a hole for "source wiring connection terminals," even though the specification describes hole 212 as: "contact hole 212 leading to the source wiring." JA110 at 36:32-33. Neither the G embodiment nor any of its corresponding figures show or describe "source wiring connection terminals," let alone any contact hole for such terminals. *See* JA110 at 35:31-36:45. Eidos's annotations also imply that "source wiring" and "source wiring connection terminals" are interchangeable, but that "gate wiring" and "gate wiring connection terminals" are distinct. Br. 50. Nothing in the '958 Patent discloses, corresponds, or implicitly supports these annotations. *See* JA110 at 35:31-36:45.

Further, although Figure 61 does not illustrate a contact hole for the gate wiring connection terminal, Eidos's annotations suggest that the existence of this hole should be assumed. Br. 50. In the accompanying discussion, Eidos states that Figure 61 is "[s]imilar to Figure 36 …" based on the specification description of

Figure 36 (the D8 step). *Id.* It is not. Instead, the description of Figure 36 (the D8 step) expressly describes "a contact hole for a gate wiring connection terminal (formed above the gate wiring 113 although not illustrated)," while the description accompanying Figure 61 includes no such description. JA108 at 31:41-60; JA110 at 36:27-33.

### 3. Other embodiments highlight the internal inconsistencies in the intrinsic record

Original claims designated with B, C, D, F, and G step identifiers include the disputed phrase "a contact hole for source wiring and gate wiring connection terminals." JA9423; JA9425; JA9427; JA9430; JA9432. Eidos's Brief relies solely on the D embodiment as disclosing a contact hole for a gate wiring connection terminal and a contact hole for a source wiring connection terminal. *See, e.g.*, Br. 11-12, 45, 47-54. However, the other embodiments (B, C, F or G) are inconsistent in their use of the disputed language.

As discussed above, no connection terminals are disclosed in the G embodiment. *See* JA110 at 35:31-36:65. The D embodiment describes the D8 step as forming separate holes for a source wiring connection terminal and a gate wiring connection terminal, but describes forming a contact hole leading to gate wiring in a different step, and never describes forming a contact hole to the drain electrode in *any* step. *See* JA107 at 30:22 - JA108 at 32:8. The B, C, and F embodiments

never describe forming a contact hole for a gate wiring connection terminal.  *See* JA105 at 26:44 - JA107 at 30:21; JA109 at 33:66 - JA110 at 35:30.

A table summarizing the original claims and their corresponding embodiments follows:

| Original Claim | Claim Limitation | Embodiment | Describes a contact hole for a source wiring connection terminal? | Describes a contact hole for a gate wiring connection terminal? |
|---|---|---|---|---|
| 3 | "a contact hole for source wiring and gate wiring connection terminals" | B | Yes | No |
| 4 | | C | Yes | No |
| 5 | | D | Yes | Yes |
| 7 | | F | Yes | No |
| 8 | | G | No | No |

### 4.    The D and G embodiments disclose entirely different processes

There are many important differences between the D and G embodiments. The D embodiment is a four-mask process.  JA107 at 30:22 - JA108 at 31:56 (D embodiment).  But the G embodiment is a five-mask process.  JA110 at 35:31-36:45 (G embodiment).  Moreover, the sequence in which the patterns are etched differs.  For example, the pixel electrode is formed first in the D embodiment, but last in the G embodiment.  JA107 at 30:47-49 (D embodiment); JA46 (Fig. 30); JA110 at 36:40-43 (G embodiment); JA57 (Fig. 63).  Accordingly, the resulting D embodiment TFT array is inverted compared to the resulting G embodiment TFT

array.  *See* JA107 at 30:22 - JA108 at 32:8.  This is a fundamentally different approach to manufacturing a TFT array.

The differences do not end with the pixel electrode:  the D embodiment forms a contact hole leading to the gate wiring in the D4 step, while the G embodiment forms that contact hole in the G8 step.  *Compare* JA108 at 31:4-9 *with* JA110 at 36:28-34.  The D embodiment does not describe forming a contact hole leading to the drain electrode or a contact hole leading to the source wiring in any step, while the G embodiment forms both in the G8 step.  *Compare* JA107 at 30:22 - JA108 at 32:8 *with* JA110 at 36:28-34.  The D embodiment also describes forming both "a contact hole 132 for a source wiring connection terminal and a contact hole for a gate wiring connection terminal" in the D8 step, while the G embodiment does not describe forming such contact holes in any step.  *Compare* JA108 at 31:42-57 *with* JA110 at 35:31-36:65.

### 5.    Embodiment S discloses forming one contact hole for connecting the source wiring and the gate wiring

Other embodiments in the '958 Patent describe patterning one contact hole for the specific purpose of connecting the gate wiring and the source wiring.  For example, embodiment S specifically discloses the formation of "a contact hole 463 for connecting the gate wiring and the source wiring."  JA119 at 54: 5-6.  The corresponding Figure 155 shows a single contact hole, 463, for that purpose.  JA86.  This embodiment shows that the patentee contemplated connecting the

source wiring and the gate wiring with a common contact hole, similar to the

grammatical structure of the G8 step's third-hole limitation.

### 6. The G8 step was the sole feature that distinguishes Claim 1 from the prior art

At the time of application, the Applicant asserted that the invention was an

advance over the prior art because it reduced the number of photolithographic

mask steps from seven to four or five, which it believed would increase production

yield and decrease manufacturing cost. JA99 at 14:31 - JA100 at 15:23. However,

during prosecution of the '958 Patent it was determined that the prior art already

disclosed five mask processes, and the G8 step was the only novel aspect of the

claim. JA9521. According to the examiner, the closest prior art "discloses the

claimed method *except for step G8*." JA9521.

### C. The Reexamination Examiner Found the G8 Step Unclear But Could Not Address Indefiniteness During Reexamination

The USPTO ordered an *ex parte* reexamination of the '958 Patent.

JA11909. In a Non-Final Rejection, the examiner observed that the claim was

"unclear in at least two regards," but noted that indefiniteness was beyond the

scope of reexamination. JA11878.

The reexamination examiner first considered the plain language of the claim,

and concluded that "the language literally states that there is a **single** contact hole

for **both** the source wiring and gate wiring connection terminals." JA11879. But

the examiner assumed that this "would result in the source and gate wiring being shorted to each other." *Id.* Based on this inoperability concern, the examiner then stated that "it would appear that the claim language implicitly requires separate contact holes for the source wiring and gate wiring connection terminals." *Id.* The examiner found no written description support for the separate contact holes and, in fact, observed that these separate contact holes are "neither shown in Fig. 61 nor discussed in the associated text of the specification." *Id*.

Having altered the literal claim language to split the third contact hole in two, the examiner observed that this modification created "a contact hole reaching the gate wiring" and "a contact hole for ... gate wiring connection terminals." *Id.* He also noted that this made the claim "unclear" in a second way because Figure 61 and the written description failed to distinguish those two. *Id.* He then concluded, under the broadest reasonable interpretation standard, that these gate wiring and gate wiring connection terminal holes are "one and the same." JA11879-80. He then rejected Claim 1 under 35 U.S.C. §§ 102 and 103 in view of prior art references. *Id.*

In response, Eidos added thirteen new claims. JA11657-60. New Claim 14's G8 step recites four "contact hole[s]," with the first two identical to Claim 1, but the third and fourth holes reflect Eidos's first proposed construction for Claim 1, not the actual language of Claim 1. *Id.* That is, new Claim 14 expressly

requires the four holes that Eidos seeks to read into Claim 1 via its claim construction arguments in this appeal. Claim 14 never issued and the '958 Patent expired in June 2014.

### D. The District Court Is Unable To Ascertain the Scope of the Disputed Limitation

Before the claim construction proceedings, Defendants requested permission to file a motion for summary judgment of non-infringement. JA805-09. Defendants showed that they did not infringe because Eidos had not accused any products of infringing that used a common contact hole for both source wiring and gate wiring connection terminals. *Id.* Eidos opposed on the grounds that discovery was not yet complete, it could still amend its contentions, and it wanted to submit expert opinion on the doctrine of equivalents issue. JA820-22. The District Court denied Defendants' request without prejudice. JA825.

### 1. The District Court first attempted, and then declined, to construe the G8 step

During claim construction, the parties disputed whether the G8 step required the creation of three types of contact holes (Defendants' construction) or four types

of contact holes (Eidos's first construction).  The parties' proposed constructions

for the G8 step are below.[1]  JA898-99.

| Claim Language | 1. Defendants' Proposed Construction | 2. Eidos's Proposed Construction |
|---|---|---|
| [a fourth photolithographic step G8 of] patterning the passivation film to form a contact hole reaching the gate wiring, a contact hole reaching the drain electrode and **a contact hole for source wiring and gate wiring connection terminals** | Plain meaning, which is removing portions of the passivation film to form a first opening exposing a portion of the gate wiring, a second opening exposing a portion of the drain electrode, and **a third opening for source wiring and gate wiring connection terminals** | removing portions of the passivation film to form an opening exposing a portion of the gate wiring, an opening exposing a portion of the drain electrode, **an opening for a source wiring connection terminal, and an opening for a gate wiring connection terminal** |

Defendants maintained that the G8 step claimed the formation of three

contact holes based on Claim 1's literal language.  JA1307-09.  Defendants also

argued that Eidos's first construction (4 holes) was a rewrite (*id.*), as apparent from

a visual inspection of Eidos's proposed changes to the literal language:

---

[1] The parties agreed to substitute "removing portions" for "patterning," "opening" for "contact hole," and "exposing a portion of" for "reaching."  Those substitutions are not material to the dispute.

a fourth photolithographic step G8 of patterning the passivation film to form a contact hole reaching the gate wiring, a contact hole reaching the drain electrode, and a contact hole for source wiring and gate wiring connection terminals and a contact hole for gate wiring connection terminals,

Eidos argued that Defendants' three-hole construction would render the alleged invention inoperable. JA907 ("Defendants propose definitions *that would render the array inoperable and have likely never been practiced in actual TFT manufacturing*."); JA1702 at 43:17-23 (*Markman* Hearing Tr.) ("If there was one contact terminal for source and gate, then you would, essentially, be turning on all of the transistors all of the pixels at the same time and providing the exact same information, so you wouldn't have an operable display. So the contact terminals, plural, shows that there are indeed separate structures."). Rather than citing to the G embodiment to support its rewrite, Eidos pointed to a portion of the D embodiment. JA932-35.

At the *Markman* hearing,[2] the Magistrate issued a nonbinding preliminary determination, which concluded that Defendants' plain language three-hole construction was proper. JA1653.

_____

[2] In its Opening Brief, Eidos mischaracterizes the substance of a visual aid Defendants used in their technology tutorial at the *Markman* hearing, where Eidos

(continued…)

Four months later, the Magistrate issued his opinion.  JA2013-27.  The Magistrate found that the G8 term is "seeded with ambiguity" and that "neither party's construction is supported by the specification."  JA2022.  In particular, the Magistrate rejected Eidos's reliance on the D embodiment, explaining "that embodiment does not appear to correspond to step G8 of Claim 1, because a separate step, D4, is used to form the contact hole reaching the gate wiring.  Further, the D embodiment does not disclose the formation of a contact hole reaching the drain electrode."  JA2023.  The Magistrate then held "that the issue of whether there are three or four [contact] holes, and whether those corresponding holes are separate and distinct, is not ripe for claim construction, as the dispute presented centers around theories of invalidity pursuant to 35 U.S.C. § 112."  *Id.* The District Court adopted the Magistrate's report and recommendations.  JA2441-42.

### 2.    Innolux, and then Eidos, offered additional proposed constructions

Several months later, after the exchange of expert reports and depositions, Defendants submitted letter briefs seeking to file a motion for summary judgment

---

(…continued)
purports that the tutorial shows "connection terminals" 211 and 212.  Br. 13.  That statement by Eidos is inaccurate.  Defendants' tutorial never mentioned connection terminals at all.  JA6163.  The captions instead show only three types of contact holes: those (1) leading to the source wiring, (2) leading to the drain electrode, and (3) leading to the gate wiring.  *Id.*  None are for connection terminals.

of invalidity due to indefiniteness; and Defendant Innolux filed a motion for summary judgment based on a new alternative construction. JA3878-82; JA3887-92. The Court denied Defendants' request for briefing on indefiniteness without prejudice, but requested briefing on Innolux's new proposed construction. JA4589-90.

In response, Eidos proposed a fourth construction (its second). JA4597. Eidos's second proposal combined its first proposal with the Defendants' three-hole proposal. *Compare* JA4597 *with* JA898-99. Eidos argued that the claim means either what Defendants say it means or what Eidos says it means, or both at the same time. The Innolux construction (the third overall) and Eidos's second construction (the fourth overall) are depicted below, focusing on the disputed portion.

| Claim Language | 3. Innolux Construction | 4. Eidos's Second Construction |
|---|---|---|
| a fourth photolithographic step G8 of patterning the passivation film to form a contact hole reaching the gate wiring, a contact hole reaching the drain electrode **and a contact hole for source wiring and gate wiring connection terminals** | patterning the passivation film to form a contact hole reaching the gate wiring, to form a contact hole reaching the drain electrode, **to form a contact hole for source wiring and to form gate wiring connection terminals** | removing portions of the passivation film to form an opening exposing a portion of the gate wiring, an opening exposing a portion of the drain electrode, and **an opening, *common or separate*, for source wiring and gate wiring connection terminals** |
| JA121 at 58:36-40 | JA3879 | JA4597 |

The District Court declined to adopt Innolux's construction, and "[h]aving rejected three proposed constructions of the term at issue, the Court order[ed] briefing on whether this term is definite." JA4776.

### 3. Defendants' summary judgment briefing introduced additional evidence of indefiniteness

Defendants' motion for summary judgment on the issue of indefiniteness relied on both the intrinsic and extrinsic record.

First, the intrinsic record by itself is evidence that Claim 1 is indefinite. For instance, the reexamination examiner observed that the G8 step's third-hole limitation made Claim 1 unclear for at least two reasons, as discussed above. JA11878; JA5644.

Second, the extrinsic record is full of evidence that Claim 1 fails to apprise one of ordinary skill of its scope. JA5643-45. Defendants' summary judgment motion demonstrated how Defendants' experts opined how one skilled in the art would understand the literal meaning of the claim language: Mr. Stewart and Dr. Silzars maintained Defendants' three-hole construction and Dr. Kanicki maintained Innolux's new third construction. *See, e.g.*, JA5660-61 at ¶¶ 36-38; JA5676 at ¶ 95; JA5684-85 at ¶ 24. Defendants' summary judgment motion also cited to the differing opinions of Eidos's experts as adding to the ambiguity of Claim 1. JA5644.

Each of Defendants' experts further opined that the literal meaning might be a drafting error. *See, e.g.*, JA5660-61 at ¶¶ 36-38; JA5676 at ¶ 95; JA5684-85 at ¶ 24. Defendants' experts also opined that the written description of the G embodiment could not be reconciled with the literal language of Claim 1. *See* JA5663-64 at ¶ 45-48 ("[t]his specification disclosure cannot be reconciled with the language of the G8 step of Claim 1 without significantly altering the claim language"); JA5684 at ¶ 23 ("I agree with the Court that the specification of the '958 Patent does not [provide] support for either Plaintiffs' or Defendants' proposed constructions."). That is, Defendants' experts pointed out the exact issue troubling the Court—that other than the literal language of Claim 1, the intrinsic record failed to provide guidance to instruct one of skill in the art as to the proper scope of the claimed G8 step.

Defendants' experts also opined that Eidos's proposed four-hole construction has no support in the written description. JA5668 at ¶ 135; JA5677-78 at ¶ 208; JA5683-84 at ¶¶ 21 and 23.

In opposition, Eidos's experts opined that the "purpose" of Claim 1 is to make four holes. *See, e.g.*, JA5942 at ¶ 1. Eidos's experts focused on what they would "understand" the claim to mean, as opposed to what Claim 1 actually recites. *See id.* They opined that a person of ordinary skill would not understand the claim to require a common contact hole for both source wiring connection

terminals and gate wiring connection terminals because such a method would be contrary to both manufacturing knowledge and the specification. JA5942-43; JA5955-58. The implied reasoning is that unless certain steps were taken to avoid shorting the gate wiring and source wiring together, a common contact hole would result in an inoperable device. JA924 ("a single conductor for connection to source wiring and gate wiring would render an LCD device inoperable"). But Eidos's experts ignored embodiment S, which describes a common hole for connecting gate wiring and source wiring. JA119 at 54:5-6 ("a contact hole 463 for connecting the gate wiring and the source wiring").

Turning to the written description, Eidos's experts did not opine that the corresponding G embodiment describes four contact holes. They instead opined that one of ordinary skill would "understand" that a fourth contact hole should be assumed to exist. JA5947; JA5961-62.

Eidos's experts also focused on a portion of the D8 step in the specification, which does not describe the first two holes of the claimed G8 step but does describe forming "a contact hole 132 for a source wiring connection terminal and a contact hole for a gate wiring connection terminal." JA108 at 31:50-52. Eidos's experts opined that this description should be used to "understand" (i.e., rewrite) the plain language in original Claim 5 because this claim corresponds to the D embodiment. JA5947; JA5961-62. Next, Eidos's experts opined that because

19

Claim 1 uses the same language as original Claim 5, a person skilled in the art would "understand" the language in Claim 1 should be altered in the same way. *See, e.g.*, Br. 47-55. However, Eidos's experts did not cite any discussion in the D embodiment that would suggest the patentees intended to override the plainly different claim language with the language from the specification. Nor did their experts explain their selection of the D embodiment over the B, C, F, and G embodiments, which also contained the disputed claim language.

Eidos also continued to press its second construction, arguing that "the term may be construed to cover both Eidos's and Defendants' proposed constructions, instead of choosing between these mutually exclusive alternatives." JA5934.

### 4. The District Court held Claim 1 held invalid as indefinite

The Magistrate found that "the intrinsic record fails to indicate which construction is correct leaving the disputed claim language insolubly ambiguous." JA28. In reaching that result, the Magistrate considered the intrinsic and extrinsic evidence submitted by both sides. JA30-33. The Magistrate noted the reexamination examiner's finding that Claim 1 was unclear in at least two regards, which confirmed the ambiguity in the claim language. JA31-32. The Magistrate also noted that Defendants' expert opinions "demonstrate the ambiguity" in the claim while Eidos's expert opinions failed to "conform to the specification." JA32; JA33. The Magistrate also noted that Eidos's second construction (the

fourth overall) "compounds the ambiguity by interpreting the claim to mean either Defendants' original construction (same contact hole) or Eidos' original construction (separate contact holes)."  JA33.

The Magistrate finally observed that guessing at a proper construction, unmoored from the intrinsic record, was "beyond its authority" and "defeats the required notice function" of Section 112.  JA34.  The District Court adopted the Magistrate's order (JA22C) and entered final judgment (JA22A; JA22B).

## IV.   SUMMARY OF THE ARGUMENT

The District Court was correct in holding the claim invalid as indefinite. Indefiniteness is a question of law for the court, which the Defendants have to prove by clear and convincing evidence.  Disputes between experts may be resolved by the district court, just like in claim construction.  On several occasions, the District Court thoroughly analyzed the '958 Patent, its file history, the reexamination record, the testimony of five experts, and the parties' arguments concerning the claimed G8 step.  These analyses led the District Court to conclude, by clear and convincing evidence, that Claim 1 was indefinite.  Its decision should be affirmed.

Defendants provided evidence that the language of the claimed G8 step literally requires only three holes.  Both the reexamination examiner and the Magistrate Judge initially agreed.  However, the examiner believed that the G8

step was unclear in at least two regards; but he recognized he could not address issues of indefiniteness in the reexamination. In its *Markman* order, the Magistrate withdrew his initial construction following the literal claim language, and instead found "the claim language is seeded with ambiguity" and that "the dispute presented centers around theories of invalidity pursuant to 35 U.S.C. § 112." In its summary judgment order, the District Court correctly determined that the intrinsic record did not resolve the ambiguity of Claim 1, and held the patent invalid.

Eidos's primary argument on appeal is that its first proposed construction is correct. However, Eidos's four-hole construction of the G8 step is a rewrite. Eidos completely ignores the literal language of Claim 1 because, as Eidos admits, none of the Defendants literally infringe under the plain language construction. Thus, Eidos had to rewrite the G8 step's third-hole limitation to have any chance of proving infringement.

Turning to the written description, Eidos's construction is not supported by the intrinsic evidence—just as the District Court correctly concluded. It does not correspond to any of the 18 preferred embodiments; to any of the over 170 drawings; or to any of the 20 aspects listed in the Summary of the Invention. Moreover, the D embodiment's (but not the G embodiment's) eighth step expressly recites the same language Eidos uses to rewrite the third hole limitation of the claimed G8 step, demonstrating that if the inventors wanted to claim separate holes

for source wiring connection terminals and gate wiring connection terminals, they

knew how to and could have done so.  Simply put, the specification provides **no**

basis to allow one skilled in the art to confirm that Eidos's proposed construction is

correct, much less with the required reasonable degree of certainty.

Contrary to Eidos's arguments, the District Court considered extrinsic

evidence offered by expert witnesses from both sides.  The court rejected Eidos's

evidence as contrary to the intrinsic record, considered evidence of Defendants'

experts, and resolved the conflicting testimony as further highlighting the

ambiguity of the claim language.  Its summary judgment ruling was supported by

clear and convincing evidence.

Eidos effectively admitted to the uncertainty and indefiniteness when it

proposed its second construction—one that Eidos never mentioned in its Brief.

Eidos's second construction proposed that the G8 step's third-hole limitation must

mean either Defendants' construction (one common contact hole) or Eidos's first

construction (two separate contact holes).  As the District Court held, Eidos's

second construction only compounded the ambiguity, which bolstered the District

Court's conclusion that Claim 1 fails to inform those skilled in the art about the

scope of the invention.  Therefore, the District Court's conclusion shows that

Claim 1 "read in light of the specification delineating the patent, and the

prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."

Alternatively, if this Court adopts Defendants' plain-meaning construction, it should affirm the judgment on the alternative ground of non-infringement. Eidos conceded there is no literal infringement under Defendants' construction. Nor can Eidos maintain its doctrine of equivalents theory based on one paragraph of conclusory expert testimony that lacks the required particularized analysis and which contradicts Eidos's own representation that the accused processes form a structure that is the antithesis of Defendants' construction.

## V. STANDARD OF REVIEW

"[D]etermination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1376 (Fed. Cir. 2001) (citation omitted). "A decision holding a patent invalid for indefiniteness presents a question of law, which [the Federal Circuit] review[s] de novo." *Id.* Similarly, a district court's claim construction is reviewed de novo. *Lighting Ballast Control LLC v. Philips Electronics N. Am. Corp.*, 744 F.3d 1272 (Fed. Cir. 2014) (en banc).

Applying Fifth Circuit law, this Court reviews the District Court's decision to grant summary judgment de novo, applying the same standard as the District Court. *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129 (Fed.

Cir. 2011). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## VI. ARGUMENT

Eidos contends that the District Court erred in concluding Claim 1 is indefinite, but Eidos's appeal hinges upon this Court adopting Eidos's first construction. Eidos ignores the claim language, and instead focuses only on what its experts "understand" to be the "purpose" of the claim.

The intrinsic record provides no guidance to ascertain with reasonable certainty the boundaries of the claim, as the claim language conflicts with the disclosure. For this reason, the District Court was correct in holding the claim invalid as indefinite.

Alternatively, this Court can affirm the judgment by adopting Defendants' plain language construction because there is no infringement under that construction.

### A. Claim 1 Plainly Recites Forming Only Three Contact Holes in the G8 Step

"The name of the game is the claim." Giles S. Rich, *Extent of Protection and Interpretation of Claims—American Perspectives*, 21 INT'L REV. OF INDUS. PROP. & COPYRIGHT L. 497, 499 (1990); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) ("It is a bedrock principle of patent law that

the claims of a patent define the invention to which the patentee is entitled the right

to exclude.") (internal quotation marks omitted). "[W]e look to the words of the

claims themselves . . . to define the scope of the patented invention." *Vitronics

Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *McCarty v.

Lehigh Val. R. Co.*, 160 U.S. 110, 116 (1895) ("if we once begin to include

elements not mentioned in the claim, in order to limit such claim . . . we should

never know where to stop.").

Where the claim language is plain, "courts may not redraft claims, whether

to make them operable or to sustain their validity," nor is it proper to "import the

alleged disclosed embodiment into the claims to rewrite the claims." *Chef Am.,

Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004). The

specification cannot override the plain language unless the written description

demonstrates that "the patentee acted as his own lexicographer and clearly set forth

a definition of the disputed claim term." *CCS Fitness, Inc. v. Brunswick Corp.*,

288 F.3d 1359, 1366 (Fed. Cir. 2002) (citing *Johnson Worldwide Assocs., Inc. v.

Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999)).

The plain language of Claim 1, which Eidos ignores, conveys one clear

meaning: three contact holes. And the patentee did not change that meaning by

redefining any claim terms in the specification. *Hill-Rom Servs., Inc. v. Stryker

Corp.*, No. 2013-1450, 2014 WL 2898495 at *2-3 (Fed. Cir. June 27, 2014) ("We

depart from the plain and ordinary meaning of claim terms based on the specification in only two instances: lexicography and disavowal.").

Claim 1 recites three contact holes, and uses the same grammatical structure (punctuation and placement of conjunctions) to define the properties of each:



Defendants' construction is nothing more than the plain language of the claim with simple word substitutions agreed to by the parties. *See* fn. 2 above.

By contrast, Eidos's first proposed construction adds words and a fourth "contact hole," and also relocates punctuation and conjunctions. It replaces the third contact hole in the claim with two new contact holes. JA1307-09:

a fourth photolithographic step G8 of patterning the passivation film to form a contact hole reaching the gate wiring, a contact hole reaching the drain electrode, ~~and~~ a contact hole for source wiring ~~and gate wiring~~ connection terminals and a contact hole for gate wiring connection terminals,

Unlike Defendants' construction, Eidos's first construction requires materially altering the plain language.

**B.     The Differences Between Claim 1 and the Written Description Prevents Attaching a Meaning to Claim 1**

**1.     The reexamination examiner confirmed the literal meaning and indefiniteness problems**

The reexamination examiner did not adopt Eidos's construction, as Eidos argues (*see, e.g.*, Br. 15). Consistent with the plain language the reexamination examiner initially concluded, "the language literally states that there is a **single** contact hole for **both** the source wiring and gate wiring connection terminals." JA11879. That should have ended the analysis. However, the reexamination examiner found that the G8 step was "unclear in at least two regards," and stated that he could not reject the claim as indefinite because "issues of 35 U.S.C. § 112, second paragraph [are] beyond the scope of reexamination." JA11878.

The examiner then struggled to assign some meaning to the claim language under the "broadest reasonable interpretation." *Id*. The examiner expressed

concern that "if this[, the G8 step's plain language,] were the case, then deposition of the 'transparent conductive film 213' in step G9 (the '958 patent, col. 36, line 34) would result in the source and gate wiring being shorted to each other," so he concluded, "[t]hus, it would appear that the claim language implicitly requires separate contact holes for the source wiring and gate wiring connection terminals." JA11879.

The examiner's sole basis for splitting the third contact hole was inoperability concerns, not written description support, which Eidos relies upon on appeal. *See id.* The examiner expressly found a lack of written description support, because separate contact holes are "neither shown in Fig. 61 nor discussed in the associated text of the specification." *Id.*

The law, though, does not permit departure from the acknowledged literal language to correct a perceived nonsensical result or operability issue. "[A] court may not rewrite a claim even if giving a disputed claim its plain meaning would lead to a 'nonsensical result.'" *Source Vagabond Sys., Ltd. v. Hydrapak, Inc.*, Nos. 2013-1270, 2013-1387, 2014 WL 2521515, *7 (Fed. Cir. Jun. 5, 2014) (quoting *Chef Am., Inc.*, 358 F.3d at 1374 ("courts may not redraft claims, whether to make them operable or to sustain their validity")). The reexamination examiner's initial conclusion supports a literal-language construction, *i.e.*, the acknowledged "literal" meaning, and the stated concern that no specification support exists, from which

29

the District Court correctly found the examiner's concerns with the literal language "clearly shows that the claim language is seeded with ambiguity." JA32.

> **2. The Magistrate initially adopted the literal meaning of the G8 Step, but later rejected it for having no support from the specification**

Just before the *Markman* hearing, the Magistrate issued a tentative claim construction ruling that the claimed G8 step meant what it said, i.e., three contact holes, with the third one for both connection terminals. JA1653. Four months later in his claim construction Order, the Magistrate rejected the literal claim language noting that "neither party's construction is supported by the specification." JA2022.

Further, the Magistrate noted that "the Patent Examiner's statement that 'the language literally states that there is a single contact hole for both the source wiring and gate wiring terminals…[but] the claim language implicitly requires separate contact holes for the source wiring and gate wiring connection terminals' does not support Defendants' contention that the claim language is unambiguous, but rather points out the exact ambiguity that lies therein." *Id.* The Court then concluded the issue of whether the claimed G8 step required three or four holes "is not ripe for claim construction, as the dispute presented centers around theories of invalidity pursuant to 35 U.S.C. § 112." JA2023.

## C. After Numerous Attempts at Construction, the District Court Properly Concluded that Claim 1 Is Indefinite

Ultimately, after ordering summary judgment briefing from the parties on the issue of indefiniteness, the District Court held that Claim 1 is indefinite, and therefore invalid. It did so after multiple efforts at claim construction failed. Its decision should be affirmed.

### 1. The District Court considered four proposed constructions, but rejected them all

The *Markman* Order was the second attempt by the District Court to construe Claim 1. Next, the District Court reviewed the parties' briefing on Defendants' objections to the Magistrate's order, and ultimately affirmed the *Markman* Order that Claim 1's G8 step was not ripe for construction. *See* JA2088-171; JA2172-334; JA2441-42.

Eidos encouraged the District Court to overrule Defendants' objections, arguing that the *Markman* Order "should be adopted in its entirety." JA2175. Eidos did so even though the Order concluded that Eidos's construction lacked support in the intrinsic record. JA2018-23.

As trial approached, Innolux proposed a third construction in its summary judgment letter briefing. The District Court invited all parties to submit briefing on this third proposed construction. *See generally* JA4591-637; JA4638-72; JA4673-766; JA4767-75. After reviewing the parties' briefing, the Court ordered

31

briefing on the definiteness issue after "[h]aving rejected three proposed constructions of the term at issue."  JA4776.

After considering the parties' summary judgment briefing and analyzing intrinsic and extrinsic evidence for a fourth time, the Magistrate recommended summary judgment of indefiniteness.  *See generally* JA5638-734; JA5922-6231; JA6232-44; JA6245-52.  On review, the District Court Judge took into account the Magistrate's recommendation, as well as Eidos's objections to the Magistrate's recommendation.  The District Court Judge then adopted "the Order of the United States Magistrate Judge as the findings and conclusions of this Court," and granted Defendants' indefiniteness motion.  *See generally* JA9060-133; JA9134-49; JA9150-62.  Between the Magistrate and District Court Judge, there were no fewer than six separate examinations (four by the Magistrate and two by the District Court Judge) of the intrinsic and extrinsic record before reaching the conclusion of indefiniteness.

### 2. The District Court thoroughly examined the intrinsic record in finding Claim 1 indefinite, and rejected Eidos's constructions

Eidos's Opening Brief suggests that the intrinsic record supports its four-hole construction.  However, the District Court fully considered the record, including every portion Eidos identified, and concluded the record does not support any proposed construction, including Eidos's.  JA28 ("the intrinsic record

fails to indicate which construction is correct leaving the disputed claim language insolubly ambiguous").

### a. None of the eighteen preferred embodiments supports Eidos's construction

None of the eighteen detailed embodiments describe or illustrate forming, in a single step, the four separate contact holes in Eidos's first construction. This is undisputed. The District Court arrived at this conclusion in rejecting Eidos's construction. JA29. Eidos points to two embodiments—D and G—for support, but is only able to point to those embodiments to support portions, not all, of its construction. *See, e.g.,* Br. 52 (D specification embodiment does not disclose two of the four contact holes in Eidos's construction), 50 (Figure 61, illustrating the specification G8 step, "does not illustrate the separate contact hole for the gate wiring connection terminal"). Further, Eidos ignores several other embodiments that demonstrate the impropriety of Eidos's attempt to cobble together portions of unrelated embodiments to support its position.

### b. The G embodiment does not support Eidos's rewrite

Eidos relies on the G embodiment to support its construction but the G embodiment actually illustrates the ambiguity of the claimed G8 step. The specification describes a G8 step of forming three, not four, contact holes: "a contact hole 210 leading to the drain electrode 207, a contact hole 211 leading to

the gate wiring 193 and a contact hole 212 leading to the source wiring 206."
JA110 at 36:30-33. The first two—"a contact hole 210 leading to the drain
electrode 207" and "a contact hole 211 leading to the gate wiring 193"—
correspond to recitations in Claim 1. JA121 at 58:37-41. But, the third— a
contact hole 212 leading to the source wiring 206"—differs from the G8 step's
third-hole limitation. Further, there is no description regarding forming contact
holes for connection terminals. *See id.* Thus, despite the use of common reference
characters, the G specification embodiment differs from the G8 step of Claim 1.

To manufacture some intrinsic support, Eidos's Brief relies on an
"annotated" version of Figure 61 Eidos modified to fit its purpose. Br. 50. First,
while the specification describes "contact hole 212" as "leading to the source
wiring 206," Eidos incorrectly represents that "Figure 61 … depicts a contact hole
(212) for the source wiring connection terminal." *Compare* Br. 50 *with* JA110 at
36:32-33; *see also* JA11879 (reexamination examiner stating that source wiring
connection terminal "is neither shown in Fig. 61 nor discussed in the associated
text of the specification.").

Eidos's alterations are also inconsistent. There is no basis for Eidos to alter
"a contact hole 212 leading to the source wiring 206" to mean "a contact hole for
the source wiring connection terminal." If there was, then the term "a contact hole
211 leading to the gate wiring 193" must also mean "a contact hole for the gate

wiring connection terminal," which further compounds the ambiguity inherent in the G8 step. JA11879 ("Fig. 61 and the specification again fall short in its explanation for failing to distinguish between that which is 'a contact hole reaching the **gate wiring**' and that which is 'a contact hole for . . . **gate wiring connection terminals**'"). Eidos's annotations, just like its proposed construction, lack written description support.

Moreover, Eidos mischaracterizes the corresponding written description by arguing that a fourth contact hole should be assumed. Eidos's Brief, in explaining the annotation, misleadingly states that "Figure 61 does not illustrate the separate contact hole for the gate wiring connection terminal," and that this is "[s]imilar to Figure 36." Br. 50. But the specification corresponding to Figure 36 (the D8 step) expressly describes "a contact hole for a gate wiring connection terminal (*formed* above the gate wiring 113 *although not illustrated*)." JA108 at 31:42-57 (emphasis added). By contrast, the specification corresponding to Figure 61 includes no such description.

Rather than lend credence to Eidos's argument that a contact hole for a gate wiring connection terminal should be assumed to exist, the description of Figure 36 demonstrates that if the inventors wanted to describe a contact hole formed, "although not illustrated," they knew how to do so, but chose not to in the G embodiment.

A corrected version of Eidos's "annotation" is shown below:



Thus, the G embodiment does not provide support for Eidos's four-hole construction. The G8 step's third-hole limitation is included in original Claim 8 of the parent application, Claim 1 as filed in the '958 application, and is repeated in the "Summary of the Invention" section. If that plain language is insufficient to provide public notice, then a finding of indefiniteness follows because the specification provides insufficient guidance of an alternative meaning.

### c. The D embodiment does not support Eidos's construction

Eidos relies heavily on the D embodiment, and even criticizes the District Court for "focusing on the 'G' embodiment of the patent rather than the entirety of the specification including the 'D' embodiment." Br. 25. However, the District Court specifically considered the D embodiment, and correctly concluded that it did not support Eidos.

Eidos does not argue that the D embodiment provides complete support for its construction of the G8 step. Rather, Eidos solely relies on a small and out of context sentence from the D specification embodiment that states in the D8 step: "a contact hole 132 for a source wiring connection terminal and a contact hole for a gate wiring connection terminal … are formed." Br. 53-54. The District Court addressed that language and concluded that this language, which differs from the claim language, does not support Eidos's construction and instead "demonstrates that if the inventors had wanted to describe separate contact holes formed in the G8 step, they could have done so." JA29. This Court has applied the same rationale in other cases: "The intrinsic evidence of the specification therefore suggests that the patentees knew how to restrict their claim coverage to holes passing through at right angles. They could have used the word 'perpendicular,' as they did in discussing their preferred embodiment. Instead, they chose a different term …."

*E.g.*, *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 807 (Fed. Cir. 2007) (citing

*Phillips*, 415 F.3d at 1314).

Thus, the District Court did not "disregard" the D embodiment as Eidos

claims (Br. 52), but rather thoroughly addressed the sole section to which Eidos

cites. It properly determined that Eidos's cited section did not support its

construction. JA29-30; JA2022-23.

Moreover, Eidos's argument that the D embodiment should override the

plain language fails for another reason. The specification cannot override the plain

language unless Eidos demonstrates that "the patentee acted as his own

lexicographer and clearly set forth a definition of the disputed claim term." *See*

*CCS Fitness*, 288 F.3d at 1366 (citing *Johnson Worldwide Assocs., Inc.*, 175 F.3d

at 990). Yet neither Eidos nor its experts argue that the specification includes an

express redefinition of the claim phrase. Br. 28-29.

Finally, Eidos argues that "differences [between Claim 1 and the D

embodiment] concerning the contact holes reaching the gate wiring … are

irrelevant to whether the contact holes for the source wiring and gate wiring

connection terminals are the same or separate holes." Br. 52. But those

differences are relevant to the second "unclear" aspect identified by the

reexamination examiner. JA11879. Having modified the claim language to split

the third contact hole in two, the examiner observed that this modification created

a new question: were "a contact hole reaching the gate wiring" and the newly-created "a contact hole for ... gate wiring connection terminals" the same or different? *See id.*

The examiner initially concluded that these gate wiring and gate wiring connection terminal contact holes are "one and the same" (*id.*) but later accepted Eidos's *ex parte* arguments for the opposite interpretation based on the D embodiment. JA11663-70. The District Court correctly pointed out that Eidos's reexamination arguments invoking the D embodiment were unpersuasive because the description of the D embodiment forms a contact hole reaching the gate wiring in one step, D4, and later forms a contact hole for a gate wiring connection terminal in a later step, D8. JA29-30; JA2022-23. This key difference provides no support for forming those two gate-wiring-related contact holes in a single step, as Eidos would "understand" Claim 1 to require. JA29-30. If Eidos were correct that the third contact hole should be split in two, it still cannot support its construction without resolving this second "unclear" aspect.

This second "unclear" aspect also refutes Eidos's argument that the third contact hole should be split because the split structure was well known. *See, e.g.*, Br. 12. First, there is no basis to conclude that this claim element would be understood to cover what was well known rather than what was not known. Patent claims typically do just the opposite—they cover what was not known rather than

what was well known.  Second, Eidos cannot have it both ways.  Eidos cannot first argue that the claim should be rewritten to what is well known and then argue that the resulting rewritten structure forms the point of novelty—especially when the specification provides no support for that point of novelty.

### d.  The B, C, and F embodiments do not support Eidos's construction

Once Eidos departed from the description of the G embodiment to support its rewrite, it cherry-picked the D embodiment rather than any of the three other embodiments for which there are also original claims sharing the same disputed language.  Eidos argues that the original claims "consistently" use the disputed phrase:  "a contact hole for source wiring and gate wiring connection terminals" to refer to the same described structure.  Br. 23.  But the opposite is true.  Original Claims 3, 4, and 7 also contain the disputed phrase "forming a contact hole for source wiring and gate wiring connection terminals," respectively in steps B9, C9, and F8.  JA9421-25 (original Claims 3 and 4); JA9429-30 (original Claim 7).  However, those embodiment steps only describe forming a contact hole for "a source wiring connection terminal," as opposed to forming two separate contact holes, one for a gate wiring connection terminal and a second for a source wiring connection terminal (as in the D embodiment).  JA106 at 28:1-8 (step B9 from the B embodiment); JA107 at 29:55-61 (step C9 from the C embodiment); JA109 at 34:66 - JA110 at 35:12 (step F8 from the F embodiment).  The B, C, and F

embodiments, in fact, never describe when a contact hole for a gate wiring connection terminal is formed. See JA105 at 26:44 - JA107 at 30:21 (B & C embodiments); JA109 at 33:66 - JA110 at 35:30 (F embodiment).

Therefore, original Claims 3, 4, and 7 belie Eidos's argument that the patentee intended "a contact hole for source wiring and gate wiring connection terminals" to mean two holes to one of ordinary skill. Br. 23. To reach Eidos's conclusion, one skilled in the art must know to disregard: (1) the literal language (a contact hole for source wiring and gate wiring connection terminals), (2) the G embodiment (a contact hole leading to a source wiring), (3) the B, C, and F embodiments (a contact hole for a source wiring connection terminal), and (4) all but one D embodiment clause. However, the written description offers no such guidance. Instead, it associates very different structures to the same claim term in five different and separate embodiments. There is simply no consistent use of the disputed claim language in the written description, and no teaching to justify Eidos's selection of a portion of the D embodiment to support its four-hole construction of the claimed G8 step's third-hole limitation.

Had the patentee intended to ascribe a different meaning to this disputed claim language, as Eidos suggests, it could have clearly done so. It could have, with the first use of the phrase in original Claim 3 and the B embodiment, defined "a contact hole for source wiring and gate wiring connection terminals" as two

separate holes.  The patentee did not.  *Compare* JA9423 (originally-claimed step

B9) *with* JA106 at 28:1-8 (corresponding written description for step B9).  Indeed,

the patentee associated the phrase with a contact hole for "source wiring

connection terminals" in B embodiment, and twice more with the C and F

embodiments.  *Compare* JA9425 (originally-claimed step C9) *with* JA107 at

29:55-61 (corresponding written description for step C9); *Compare* JA9430

(originally-claimed step F8) *with* JA109 at 34:66 - JA110 at 35:12 (corresponding

written description for step F8).  The D embodiment fails to support Eidos's first

construction.

### e.    The S embodiment belies Eidos's arguments

There is further support from other embodiments in the specification for

Defendants' construction, although these other embodiments were not considered

by the District Court.  Eidos attacks Defendants' construction by arguing that a

common contact hole for source wiring and the gate wiring connection terminals is

contrary to both manufacturing knowledge and the specification.  Br. 22; *see also*,

*e.g.*, JA5943.  Such an approach, Eidos argues, is "novel" and would likely result

in an inoperable device.  *See, e.g.*, JA924 ("a single conductor for connection to

source wiring and gate wiring would render an LCD device inoperable"); JA5943-

44.  However, Eidos ignores the portions of the specification which expressly

describe a common contact hole for connecting the source wiring and the gate wiring.

For example, the S embodiment specifically discloses the formation of "a contact hole 463 for connecting the gate wiring and the source wiring."  JA119 at 54: 5-6.  The corresponding Figure 155 shows a single contact hole, 463, for that purpose.  JA86.  This embodiment shows that the patentee contemplated connecting the source wiring and the gate wiring with a common contact hole, similar to the grammatical structure of the G8 step's third-hole limitation.  Thus, the intrinsic record contradicts Eidos and supports Defendants' construction that the patentee saw no obstacle in having a single contact hole for connecting source wiring and gate wiring.

### f.    The reexamination does not support Eidos's construction

Eidos also contends that the reexamination of the '958 Patent supports its position because the examiner ultimately interpreted the G8 step to have four contact holes.  Br. 55-56.  The District Court considered Eidos's arguments and rejected them, noting that the examiner's statement "clearly shows that the claim language is seeded with ambiguity surrounding the use of the indefinite article "a" followed by both the source wiring and gate wiring terminals."  JA32.

As discussed above, the reexamination examiner found that (1) the G8 step "is unclear in at least two regards" and (2) "the language literally states that there is

a **single** contact hole for **both** the source wiring and gate wiring connection terminals." JA11878-9. Each of these conclusions demonstrates the ambiguity of the claim and the lack of support for Eidos's construction. Tellingly, Eidos's Brief omits the important point that "issues of 35 U.S.C. 112, second paragraph [*i.e.,* indefiniteness] are beyond the scope of reexamination" and, therefore, the examiner was precluded from addressing indefiniteness. JA11878.

Further, the reexamination examiner erred as a matter of law by departing from the acknowledged literal language to correct a perceived nonsensical result or inoperability problem. "[A] a court may not rewrite a claim even if giving a disputed claim its plain meaning would lead to a 'nonsensical result.'" *Source Vagabond*, 2014 WL 2521515 at *5-*7 (finding a construction that "added words to the actual claim language … without support from the specification or prosecution history, altering otherwise unambiguous claim language" was not only incorrect, but subject to Rule 11 sanctions) (quoting *Chef Am.*, 358 F.3d at 1374 ("courts may not redraft claims, whether to make them operable or to sustain their validity")). Thus, the reexamination examiner's conclusion that the claims "implicitly" require four holes resulted from the examiner's improper attempt to fix the literal claim language.

Moreover, the examiner was incorrect in assuming that the literal claim language would result in an inoperable device. As Defendants' expert explained,

"[t]he proper use of ACF and flex cables was—and still is—a well-known technique for connecting to the gate and source terminals while preventing any unwanted shorting between the source and gate wiring connection terminals." JA5660.  Further, as noted above, the S embodiment recites a single contact hole for connecting the gate and source wiring, and even described this single contact hole in the written description.  JA119 at 54:5-6.  Thus, the reexamination examiner had no proper basis to depart from the literal language of the claim.

Finally, Eidos's Opening Brief omits an important aspect of the reexamination.  During reexamination, Eidos added a new claim, Claim 14, which substitutes the claimed G8 step's third-hole limitation with a rewrite reciting third and fourth holes:

> a fourth photolithographic step G8 of patterning the passivation film to form a first contact hole reaching the gate wiring, a second contact hole reaching the drain electrode, <u>a third contact hole for a source wiring connection terminal and a fourth contact hole for a gate wiring connection terminal.</u>

JA11657-60.  Eidos's only purported support for this new G8 step was the language of Claim 1 itself.  *Id.*  Eidos now urges rewriting Claim 1 to match Claim 14 on appeal.  First, Claim 14 stands rejected for other reasons, and it never will issue because the '958 Patent expired in June 2014.  Further, the need for two different claims suggests Claim 1 does not mean what Claim 14 does, which only further supports indefiniteness.  Just like the D embodiment, this confirms that the

applicant knew how to write a claim with separate holes for gate and source wiring connection terminals, but did not do so in Claim 1.

### 3. The District Court fully considered the extrinsic evidence

Contrary to statements in Eidos's Brief (*e.g.*, Br. 32), the District Court thoroughly considered extrinsic evidence offered by expert witnesses from both sides to assist in construction of the claim term at issue. In doing so, the District Court rejected Eidos's evidence as contrary to the intrinsic record, considered evidence of Defendants' experts, and determined the conflicting testimony further highlighted the ambiguity of the claim language.

### a. The District Court rejected testimony from Eidos's experts as inconsistent with the intrinsic evidence

Eidos relies heavily on what its experts "understand" the disputed claim to mean. These experts opined that the "purpose" of the claimed invention was to create four contact holes. *See, e.g.*, JA5942 (opining that "*the purpose* of the fourth photolithographic step in Claim 1" is to form four types of contact holes). But the "purpose" of the invention is not a valid consideration. *Source Vagabond*, 2014 WL 2521515 at *7. "[C]laim construction is a function of the words of the plain language not the 'purpose' of the invention." *Id.* (affirming the rejection of a construction that "violates nearly every tenet of claim construction and amounts to a wholesale judicial rewriting of the claim").

Eidos's experts attempt to ground their opinions about how one skilled in the art would "understand" the G8 step with reference to the D embodiment.  Br. 47-54; JA5947; JA5961-62.  However, as discussed above regarding the intrinsic record, the D embodiment fails to provide support for Eidos's construction.  The District Court properly concluded that "the interpretation sought by Eidos' expert does not conform to the specification."  JA33

Eidos's experts also deviate from the plain language based on the faulty premise that a common contact hole for source wiring and gate wiring connection terminals would be contrary to known manufacturing techniques at the time of the invention, or somehow present operability problems.  *See*, *e.g.*, JA5943-44.  But, as discussed above, the patent expressly discloses a common contact hole for connecting the source wiring and gate wiring.  JA119 at 54: 5-6; JA86 at Fig. 155.  Further, the operability concerns expressed by the reexamination examiner and implied by Eidos's experts are irrelevant.  "[C]ourts may not rewrite a claim even if giving a disputed claim its plain meaning would lead to a 'nonsensical result.'"  *Source Vagabond*, 2014 WL 2521515, at *7 (quoting *Chef Am., Inc.*, 358 F.3d at 1373 ("courts may not redraft claims, whether to make them operable or to sustain their validity")).  Putting that fact aside, one of ordinary skill would not necessarily perceive an operability problem with the literal language of Claim 1.  Specifically, Mr. Stewart opined that a single contact hole for both source wiring and gate

wiring connection terminals would not be inoperative because "[t]he proper use of ACF and flex cables was—and still is—a well-known technique for connecting to the gate and source terminals while preventing any unwanted shorting between the source and gate wiring connection terminals."  JA5660.

Therefore, it was appropriate for the District Court to reject Eidos's expert evidence and find the claim indefinite.

### b. Defendants offered substantial expert testimony, which the District Court considered

Contrary to Eidos's arguments, Defendants offered significant evidence from its experts on a number of relevant topics including: (1) that the literal language of claimed G8 step requires three contact holes, (2) the disconnect between the literal language of Claim 1 and the preferred embodiments, (3) the literal language cannot be corrected without substantial alterations, (4) Eidos's construction lacks support from the written description, and (5) Eidos's construction lacks support from the literal meaning of the claim.

For example, the District Court relied on the testimony of Mr. Stewart, who stated that the "literal language [of the claim] might be in error" and that he "was unable to identify another claim interpretation that is consistent with embodiments of the '958 Patent without requiring substantial alterations of the literal claim language."  JA32 (citing JA5660-61).  He further states, "[t]his specification

disclosure cannot be reconciled with the language of the G8 step of Claim 1 without significantly altering the claim language." *Id.* (citing JA5663).

Each of Defendants' three experts offered opinion that one of ordinary skill in the art would read the literal claim language to mean something other than Eidos's construction. Dr. Silzars and Mr. Stewart each opined that a person of skill in the art would understand that the "clear meaning" of the literal language of the claimed G8 step requires the formation of three contact holes, the third one being "a single contact hole for source wiring and gate wiring connection terminals." JA5660-61; JA5676. Dr. Kanicki offered an alternative construction that provides for the creation of four elements in the G8 step: formation of three contact holes plus the formation of "gate wiring connection terminals." JA5684-85. This evidence contradicts Eidos's argument that the claim is definite and that one of ordinary skill would necessarily "understand" the claimed G8 step to require four separate holes.

Defendants' experts also opined that Eidos's proposed construction contradicts the literal claim language and lacks support from the specification. Each opined that nowhere in the 58-column specification of the '958 Patent is there disclosure or description of patterning the four separate types of contact holes (reaching the gate wiring, reaching the drain electrode, for source wiring

connection terminals, and for gate wiring connection terminals) in a single step as required by Eidos's first construction. JA5668-73; JA5677-78; JA5683-84.

To discount Defendants' evidence, Eidos argues without support that Defendants must provide an expert opinion that the expert cannot understand the claim language. Br. 38-39. The law does not require an expert to admit he cannot understand the claims as drafted as a predicate to a court's holding of indefiniteness. This Court has held claims indefinite *sua sponte* in "discharging [its] duty as the construer of patent claims." *See Ernie Ball, Inc. v. Earvana, LLC*, 502 Fed. Appx. 971, 978-79 (Fed. Cir. 2013). This Court also routinely affirms summary judgments of indefiniteness in the absence of expert opinions. *See, e.g.*, *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1297 (Fed. Cir. 2005); *see also Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 723 F.3d 1363, 1368-69 (Fed. Cir. 2013) (reversing district court's holding of claims definite, and instead holding opinion of patentee's expert "does not save Group 1 claims from indefiniteness").

Eidos's reliance on *Elcommerce.com, Inc. v. SAP AG*, 745 F.3d 490 (Fed. Cir. 2014) is misplaced. In *Elcommerce.com*, there was a complete lack of evidence as to whether one of ordinary skill would find corresponding structure disclosed in the written description for the means-plus-function limitation. *See, e.g.*, *id.* at 501-02. In contrast, Defendants in this case rely on significant evidence,

including the opinions of three experts, as recited above. All of this evidence, including Eidos's expert testimony on what they would "understand" the claim to mean, demonstrates that a person of ordinary skill would have concerns with the literal language. This extrinsic evidence also shows that the intrinsic record does not resolve the ambiguity. Thus, one skilled in the art, based on review of the intrinsic record, could not determine ***with reasonable certainty*** the scope of the claim as required by *Nautilus*. *Nautilus*, 134 S. Ct. at 2124.

### c. The District Court also properly observed that the diverse opinions of multiple experts further demonstrated indefiniteness

The District Court also found that "the expert reports [of both sides] merely highlight the ambiguity in the term at issue" by demonstrating the differing views those of ordinary skill could take in interpreting the claim language. JA33. Eidos argues that the mere fact that experts disagree does not, by itself, render the claim indefinite. Br. 43-44 (citing *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776 (Fed. Cir. 2010) and *Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116 (Fed. Cir. 2002)). Neither the District Court nor Defendants rely solely on this fact. However, where the intrinsic record provides no guidance among several possible constructions, differing expert opinions are consistent with a finding that the intrinsic record fails to provide one of ordinary skill notice of the claim scope. *Nautilus*, 134 S. Ct. at 2130 ("To tolerate imprecision just short of that rendering a

claim 'insolubly ambiguous' would diminish the definiteness requirement's public-notice function and foster the innovation-discouraging 'zone of uncertainty,' against which this Court has warned." (citations omitted)).

Eidos's Brief also attempts to create a fact issue to defeat summary judgment by pointing to the parties' conflicting expert testimony. However, indefiniteness is a question of law that Eidos cannot turn into a factual matter that cannot be resolved by the Court. *See Exxon Research & Eng'g Co.*, 265 F.3d at 1376 ("We therefore reject Exxon's argument that the issue of indefiniteness turns on an underlying factual dispute that should not have been resolved as a matter of law on summary judgment."); *Lighting Ballast*, 744 F.3d at 1284-85 (expert opinions "that may assist a lay judge in determining what a technical term meant to one of skill in the art does not transform that meaning from a question of law into a question of fact."); *see also Praxair, Inc. v. ATMI, Inc.*, 543 F.3d at 1306, 1321 (Fed. Cir. 2008) (disregarding conflicting extrinsic evidence because "indefiniteness is a legal rather than a factual question").

*BJ Servs. Co. v. Halliburton Energy Servs., Inc.*, 338 F.3d 1368 (Fed. Cir. 2003) does not mean, as Eidos contends, the issue of indefiniteness in this case "is amenable to resolution by the jury where the issues are factual in nature." Br. 44. That case involved the scope of words of degree used in a claim and whether one of ordinary skill would know how to make a measurement. *BJ Servs.*, 338 F.3d at

1372.  That is not the case here.  Here, the issue is discrete: whether the claim language requires forming three contact holes or four.

### D.    Eidos's Other Arguments are Also Unavailing

#### 1.    Multiple "reasonable options" that lack intrinsic support do not cure indefiniteness

Eidos's Brief includes multiple references to the District Court's characterization of Eidos's proposed construction as "a reasonable option" (*see, e.g.*, Br. 24), but this sound bite mischaracterizes the District Court's opinion and does not preclude this Court from affirming.  The District Court was unequivocal that "neither the plain language of the G8 step in Claim 1 nor the specification" support Eidos's construction.  JA29.  By calling Eidos's construction "a reasonable option," the court indicated that Eidos's construction was an option for which "a person of ordinary skill in the art may be able to fashion an application of the grammatically ambiguous claim language."  JA33.  In that narrow sense, Defendants' construction and Innolux's construction are also fashioned of the grammatically ambiguous claim language and stand, at a minimum, on equal footing with Eidos's construction.  If that were not the case, the District Court would not have attempted to compare each construction to the specification.  Thus, the District Court concluded that this lower bar, which both Eidos's and Defendants' construction satisfied in the District Court's view, was not correct.  "[T]he standard is not whether a person of ordinary skill in the art <u>can</u> fashion an

53

application of the term, but whether in light of the intrinsic record such a person can ascertain the <u>scope</u> of the invention with a reasonable degree of precision and particularity." JA33.

Moreover, if either party submitted an unreasonable construction, that party would risk sanctions. *See MarcTec LLC v. Johnson & Johnson*, 664 F.3d 907, 919 (Fed. Cir. 2012); *see also Source Vagabond*, 2014 WL 2521515 at *7-8 (holding the District Court did not abuse its discretion in imposing sanctions based upon unreasonable claim construction arguments). Eidos cites no authority that the ability to offer a non-sanctionable claim-construction argument precludes a finding of indefiniteness.

### 2. The District Court properly noted that Eidos's second proposed construction confirmed indefiniteness

Eidos's Brief ignores its second proposed claim construction. At the District Court, Eidos abandoned its first proposed construction in favor of a second, different construction that Eidos argued, "allows for both common or separate openings for the connection terminals." JA4597. Eidos's second construction does not insert a fourth contact hole, but instead uses the phrase "common or separate" before the prepositional phrase to accomplish the same rewrite. *Id.* To explain its second construction, Eidos proposed that the claim "term may be construed to cover both Eidos's and Defendants' proposed constructions, instead of choosing between these mutually exclusive alternatives." JA5934.

As the District Court explained, "[r]ather than resolving the ambiguity,

[Eidos's second construction] compounds the ambiguity by interpreting the claim

to mean either Defendants' original construction (same contact hole) <u>or</u> Eidos'

original construction (separate contact holes)." JA33. Eidos fails to explain how

the G8 step can be "precise enough to afford clear notice of what is claimed,

thereby apprising the public of what is still open to them" when Eidos itself

advocated for two different constructions at the District Court. Such ambiguity,

whereby a patentee could seek a construction enabling two mutually-exclusive

alternatives, creates a broad "zone of uncertainty which enterprise and

experimentation may enter only at the risk of infringement claims." *Nautilus*, 134

S. Ct. at 2129 (citations omitted).

### E.    The District Court's Conclusion Is Sound under the Supreme Court's *Nautilus* Decision

In holding Claim 1 indefinite, the District Court applied the test in

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir.

1985) of whether "the claims, read in the light of the specification, reasonably

apprise those skilled in the art both of the utilization and scope of the invention."

JA27-28; JA33. This is the same framework as *Nautilus*. *Nautilus*, 134 S. Ct. at

2124 (the test is whether the claims, "read in light of the specification delineating

the patent, and the prosecution history, fail to inform, with reasonable certainty,

those skilled in the art about the scope of the invention").

The District Court even held that the claims were indefinite under the more rigorous "insolubly ambiguous" standard, but grounded its opinion firmly in the "reasonable notice" standard from *Shatterproof Glass*. *See* JA27-28 and JA33 (citing *Shatterproof Glass* on the key point that "the standard is not whether a person of skill in the art <u>can</u> fashion an application of the term, but whether in light of the intrinsic record such a person can ascertain the <u>scope</u> of the invention with a reasonable degree of precision and particularity"). In this sense, the District Court's analysis and conclusion remains consistent with the most recent Supreme Court authority on the proper standard.

The District Court also noted that guessing at a proper construction was "beyond its authority" and "defeats the required notice function" of section 112. JA34. Because Eidos's proposed construction was only one of four options supported by opinions of those skilled in the art, and there was no specific guidance in the intrinsic record, the District Court was put in the position of having to guess at which construction was correct. But guessing is beyond the court's authority and is prohibited under Federal Circuit and Supreme Court precedent. *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1358 (Fed. Cir. 2003).

The Supreme Court in *Nautilus* agreed with the District Court, emphasizing that lower courts cannot simply guess at a proper construction where more than one reasonable interpretation exists, and where the intrinsic record fails to resolve

the inherent ambiguity.  Specifically, as an example of such confusion, the Court

cited *Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*, No. 8:11-CV-2826,

2014 WL 869092, at *3-4 (M.D. Fla. Mar. 5, 2014).  *Nautilus*, 134 S. Ct. at 2130

n.8.  In *Every Penny Counts*, the District Court found that the claim term "the

account" had four plausible interpretations and that "no informed and confident

choice is available among the contending definitions."  *Every Penny*, 2014 WL

869092 at *4.  Notwithstanding, the court held that "the extent of the

indefiniteness…falls far short of the 'insoluble ambiguity' required to invalidate

the claim."  *Id*.  By disapproving that result, the Supreme Court recognized that a

court cannot simply select (i.e., guess) amongst multiple plausible interpretations.

Such impermissible guessing is precisely what Eidos asks the Court to do

here.  In Eidos's view, a claim is "amenable to construction" so long as one expert

witness testifies that he understands the claim term in dispute.  And if there are

multiple proposed constructions supported by expert testimony, the court just has

to pick one, even if the intrinsic record is silent.  *See, e.g.*, Br. 41.  But this cannot

be the law—a patent holder will always be able find some expert witness who will

claim to "understand" the claim term in dispute.  Instead, there must be some

anchor in the intrinsic record to pull the court towards the correct construction.

Otherwise, the claim scope cannot be defined or bounded.

In *Nautilus,* the Supreme Court noted, "a patent must be precise enough to afford clear notice of what is claimed, thereby 'appris[ing] the public of what is still open to them.'" *Nautilus*, 134 S. Ct. at 2129 (quoting *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996)). This absence of "clear notice" dooms Eidos's patent. The *Nautilus* indefiniteness test requires that the claims, "read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 134 S. Ct. at 2124. With no guidance from the intrinsic record in choosing between four proposed constructions, the '958 Patent fails to provide the public with clear notice as to which is the correct construction and, thus, fails to inform those skilled in the art of the scope of the invention with reasonable certainty.

The District Court's conclusion perfectly follows the requirements of *Nautilus*. Defendants provided clear and convincing evidence of indefiniteness, including the intrinsic record (the literal language, the written description, the prosecution history and the reexamination), opinions of three of its own experts, opinions of Eidos's experts, and Eidos's two proposed constructions. Having considered all of this evidence, the District Court concluded that Claim 1 is indefinite. This decision should be affirmed.

**F.    Alternatively, Judgment Can Be Affirmed for Noninfringement if the Literal-Language Construction is Adopted**

If this Court determines that Claim 1 is not indefinite and the literal language controls, then the judgment can still be affirmed. Eidos's repeated concessions require a finding of no infringement as a matter of law if the Court adopts Defendants' construction. No factual issue prevents affirming the judgment for noninfringement.

The only infringement theory Eidos asserted under Defendants' plain language construction is under the doctrine of equivalents ("DOE"). JA6434 at 14-19. However, there is no disputed fact that would preclude entry of judgment of noninfringement under the DOE. The intrinsic evidence, as discussed above, demonstrates the substantial differences between forming three contact holes as the claim requires and forming four contact holes as suggested by Eidos's rewrite. Furthermore, Eidos has repeatedly declared that its construction of separate contact holes for source wiring and gate wiring connection terminals is the antithesis of Defendants' construction:

- "Defendants propose definitions *that would render the array inoperable and have likely never been practiced in actual TFT manufacturing*." JA907 (emphasis added).

- "[O]ne large hole for both source wiring and gate wiring connection terminals … is contrary to known TFT manufacturing practices." *Id.* at n. 2.

- "If there was one contact terminal for source and gate, then you would, essentially, be turning on all of the transistors all of the pixels at the same time and providing the exact same information, so you wouldn't have an operable display." JA1702.

- "A person skilled in the art would understand that separate contact holes are required in practice because using the 'same' contact hole for both the source wiring connection terminal and gate wiring connection terminal could create a short-circuit that would render the device inoperable." JA2182.

"[C]ourts properly refuse to apply the doctrine of equivalents 'where the accused device contain[s] the antithesis of the claimed structure.'" *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012) (quoting *Planet Bingo, LLC v. GameTech Int'l, Inc.*, 472 F.3d 1338, 1345 (Fed. Cir. 2006)).

In light of these repeated statements, it is not surprising that Eidos's expert was only able to offer a single conclusory paragraph of DOE "analysis" of the G8 step:

> If, however, the Court adopts a construction that requires a single, common, contact hole for both the source wiring and gate wiring connection terminals, then [each defendant] is still practicing this claim step under the doctrine of equivalents. [Each defendant] forms the contact holes for the source wiring connection terminal and the gate wiring connection terminal during the same, fourth photolithographic step. The contact hole(s) enable electrical connections to be made between the driver circuitry and the connection terminals. Having separate contact holes for source and gate wiring connection terminals is substantially the same as having a single contact hole because the purpose of providing an electrical connection to the connection terminal is the same whether it is provided through a single contact hole

> or separate contact holes. Separate contact holes, in other
> words, perform substantially the same function (forming
> a through hole to the underlying metal layer) in
> substantially the same way (using photolithography) to
> achieve substantially the same result (enabling electrical
> connections to be formed between the driver circuitry
> and the connection terminal).

JA4520 (quoting Schlam Rep., Appx. C, ¶ 85). This testimony (which is identical for each defendant) falls well short of the "particularized testimony and linking argument as to the 'insubstantiality of the differences' between [the claimed invention] and [the accused device or process], or with respect to the function, way, result test" necessary to support a DOE claim. *Amgen Inc. v. F. Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1382 (Fed. Cir. 2009). By simply restating the "function, way, result test," as Eidos's expert does here, Eidos has not carried its burden; accordingly, there is no issue of fact on whether Defendants infringe by equivalents—they do not.

## VII. CONCLUSION

Both intrinsic and extrinsic evidence support the indefiniteness of Claim 1 of the '958 Patent. The District Court's grant of Defendants' motion for summary judgment, therefore, is not erroneous. The Court should affirm the holding of indefiniteness.

Alternatively, if the Court adopts Defendants' construction, it should affirm the judgment on the ground of noninfringement, because Eidos cannot prevail on infringement.

Dated: July 14, 2014

Respectfully submitted,

/s/ *Ming-Tao Yang*_____
Ming-Tao Yang
Jacob A. Schroeder
Finnegan, Henderson, Farabow,
  Garrett & Dunner, L.L.P.
3300 Hillview Avenue
Palo Alto, CA  99304-1203
(650) 849-6600

*Attorneys for Defendants-Appellees Chi*
*Mei Innolux Corporation, Chi Mei*
*Optoelectronics USA Inc., HannStar*
*Display Corporation, and Hannspree*
*North America, Inc.*

/s/ *Marvin Craig Tyler*_____
Marvin Craig Tyler
Brian A. Dietzel
Geoffrey William Heaven
Wilson, Sonsini, Goodrich
  & Rosati,  P.C.
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, TX  78746
(512) 338-5400

*Attorneys for Defendants-Appellees AU*
*Optronics Corporation and AU*
*Optronics Corporation America*

/s/ *Christopher R. Benson*
Eric Hall
Daniel Leventhal
Fulbright & Jaworski LLP
1301 McKinney, Suite 5100
Houston, TX 77010
(713) 651-5151

Christopher R. Benson
2705 Pearce Road
Austin, TX 78730
(8320 567-0700

*Attorneys for Defendants-Appellees*
*Chunghwa Picture Tubes, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing **BRIEF OF DEFENDANTS-APPELLEES** was served upon registered counsel by operation of the Court's CM/ECF system on this 14th day of July, 2014.

/s/ Donna Stockton
Donna Stockton

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing BRIEF OF DEFENDANTS-APPELLEES

contains 13,659 words as measured by the word-processing software used to

prepare this brief.

Dated: July 14, 2014                    Respectfully submitted,


                                        /s/Jacob A. Schroeder